GILMAN, Defendant in Error, v. HOVEY & BUCHANAN, Plaintiffs in Error.

1. Although a judgment by confession may have been rendered by a clerk in vacation, under article 22 of the practice act of 1849 (Sess. Acts, 1849, p. 96), upon a verified statement defective in that it did not sufficiently set forth the facts out of which the confessed liability arose, it is not therefore a nullity; unless set aside or vacated its validity can not be questioned collaterally.

2. Judgments confessed under article 22 of the practice act of 1849 are liens upon real estate.

*Error to Jackson Circuit Court.*

The following finding of the facts sufficiently shows the nature of this suit: "The court finds the facts of this case

to be, that on the 17th day of May, 1854, and for some time prior thereto, defendants, under the name, firm and style of Hovey & Buchanan, were engaged as partners in the practice of law at Independence, Missouri, holding themselves out to the public as qualified· for and engaged in the practice of law ; that it was a part of their business, as such attorneys, to draw deeds, examine titles, &c. ; that on said 17th day of May, 1854, plaintiff had in said Jackson county certain goods, groceries, &c., which one Abrahams proposed buying, and which plaintiff proposed selling to him if he would execute his note therefor due in six months, and secure the payment thereof to. his satisfaction ; that said Abrahams agreed to take said goods on said terms, and to secure the payment thereof by giving a lien upon the following lands, [describing them] ; that said lands were worth a sufficient amount to secure the amount of the price of said goods ; that before accepting said note and the lien upon said land to secure the payment thereof, plaintiff by his agent applied to defendants or one of them, in their professional capacity as attorneys as aforesaid, to examine into the title to said lands to ascertain if said Abrahams had a good title thereto, and if there were any encumbrances thereon of record in said Jackson county ; that prior to said examination, defendants were informed of the object for which said examination was to be made, to-wit, that a lien might be taken on said lands to secure the payment of the purchase money for the goods aforesaid, and defendants were instructed, if they found the title to said lands valid and free from encumbrance, to prepare a deed of trust from said Abrahams to plaintiff upon said lands to secure the payment of the purchase money for the goods proposed to be sold to said Abrahams as aforesaid by plaintiff; that they undertook to make said examination, and after sufficient time for examination they reported to plaintiff's said agent that the title of said Abrahams to said land was valid, and that there were no encumbrances thereon of record in said county ; and thereupon they prepared a deed of trust on said lands from said Abrahams and wife to Alexander

Street as trustee, to secure the payment to plaintiff of the purchase money of said goods, to-wit, the sum of $1050 ; that said Abrahams executed his note to plaintiff for said sum due in six months, and said Abrahams and wife executed said deed of trust to secure the payment ·of said note, and, upon the execution of said deed of trust and note, plaintiff's said agent upon said security delivered said goods to Abrahams ; that the said plaintiff by his agent paid defendants for their said services two dollars and fifty cents, the sum demanded by them therefor.   And the court further finds that on the 23d day of February, 1854, a judgment was rendered in the said Jackson circuit court by the clerk of said court in vacation, by confession, in favor of one Levi Berg and against said Abraham M. Abrahams, for the sum of $2,410.47, which said judgment was a matter of record in said Jackson circuit court, and upon which said judgment had been paid the sum $702.42 prior to the said 17th day of May, the balance of said judgment remaining unpaid and a subsisting lien on the land aforesaid on said 17th day of May, 1854 ; that there was an index to the judgments rendered in said Jackson circuit court, and that the judgment confessed as aforesaid was indexed upon the day it was confessed as aforesaid ; upon which same judgment execution issued ; under which execution the sheriff of Jackson county levied upon the lands aforesaid, and, on the 13th day of March, 1855, sold said lands ; and the amount for which said lands were so sold was not sufficient to pay the balance due on the said judgment confessed by said Abrahams as aforesaid ; that at the time of the sale of said land by said sheriff said Abrahams was and ever since has been insolvent ; that no part of said note executed by said Abrahams to plaintiff for said goods has been paid ; also that defendants failed to examine the records to ascertain if there were any judgments against said Abrahams in said Jackson county on said 17th day of May, 1854, at which time said deed of trust was drawn.   And the court further finds that plaintiff offers to subrogate the defendants to all his right by reason of the said deed of trust.   And

thereupon the court declares the law arising upon said facts to be that the judgment confessed by said Abrahams in favor of said Berg was a lien upon the lands described in the aforesaid deed of trust at the time of the drawing and execution thereof; that by reason of said judgment plaintiff has wholly lost his debt so intended to be secured by said deed of trust; and that said defendants were guilty of palpable negligence in not examining and making known to plaintiff's agent the existence of said judgment in favor of said Berg and against said Abrahams. The court thereupon finds for plaintiff the sum of one thousand and fifty dollars in damages."

The following is the confession of judgment referred to in the finding:

"Berg v. Abrahams. In the circuit court of Jackson county, Missouri. Confession of judgment before the clerk of said court in vacation. Whereas I, the above named defendant, am justly indebted to the plaintiff aforesaid in the sum of six hundred and ninety-seven dollars and twenty-nine cents, on account of a balance due, including interest on the promissory note hereto annexed, dated February 20th, 1852, and due six months after date; and whereas I am justly indebted to said plaintiff in the further sum of seventeen hundred and thirteen dollars and eighteen cents ($1,713.18) on account of a certain other promissory note, (and interest thereon to this date) hereto annexed, dated August 2d, 1852, and due six months after date; now therefore I, the defendant aforesaid, hereby authorize Samuel D. Lucas, the clerk of the Jackson county circuit court, to enter judgment against me in favor of the above named plaintiff for the amount due on said two notes, to-wit, for the sum of two thousand four hundred and ten and forty-seven one-hundredths dollars ($2,410.47). Given under my hand this 23d day of February, A. D. 1854. [Signed] A. M. Abrahams."

This statement was properly verified, and accompanying it were two notes made by Abrahams in favor of Berg—one dated February 20, 1852, for $1,143.83, upon which there was a credit of $504—the other dated August 2, 1852, for $1,610.89; each note due six months after date.

" Levi Berg vs. Abraham M. Abrahams. In vacation in the Jackson circuit court, Missouri — February 23d, 1854. Now at this day comes the plaintiff aforesaid by his attorney as well as the said defendant in his own proper person, and the said defendant (being personally known to the undersigned, clerk of the Jackson circuit court aforesaid) files herein his written statement, verified by affidavit, setting forth that the said defendant is justly indebted to said plaintiff in the sum of two thousand five hundred and ten dollars and forty-seven cents on two certain promissory notes specified in said statement, and consenting that judgment may be forthwith rendered against him, the said defendant, for the said sum upon the surrender of the said notes as aforesaid, and the said notes being produced and given up to the keeping of said court: Now therefore it is considered that the said plaintiff recover against the said defendant the sum of two thousand four hundred and ten dollars and forty-seven hundredths of a dollar (the amount of said notes and interest thereon) in the manner aforesaid, together with his costs and charges in this behalf laid out and expended, and that he have thereof execution. [Signed] Samuel D. Lucas, clerk of Jackson circuit court."

*Hovey* (with whom was *Ryland*) for plaintiffs in error.

I. The court erred in permitting the supposed judgment in favor of Berg against Abrahams to be read in evidence. It was void for want of a sufficient statement to authorize the clerk to enter the same. (Sess. Acts, 1849, p. 96 ; Plummer v. Plummer, 7 How. Prac. R. 62 ; Schoolcraft v. Thompson, id. 446 ; Lawless v. Hackett, 16 Johns. 149 ; Chappel v. Chappel. 2 Kern. 215 ; 4 Zabr. 358 ; 2 South, 479.) Although a defective execution of a power may be cured, a want of power can not. (See 1 Sugden on Powers, 264 ; 4 Watts & Serg. 511.)

II. Said supposed judgment was not a lien upon the land. It is not the judgment of a court of record, and the act of 1849 fails to make it a lien. (Denn v. Reed, 10 Pet. 524 ; R. C. 1845, p. 659, § 18, 19 ; 1 Terr. Laws, 119 ; 6 B. Mon. 154.)

III. Plaintiff applied to Buchanan in his professional capacity. He is liable only if his opinion evinced culpable ignorance of the business of a lawyer, in which character he assumed to act. (4 Burr. 2060.) The position of Buchanan is precisely the same, so far as the plaintiff is concerned, as if the confession and entry of the clerk had been presented to him, and he had been asked and paid for his opinion as to whether the same was a valid judgment and a lien upon the land, and, in consideration of the fee, he had counselled him that it was neither a judgment nor lien. The examination or non-examination of the records was fraught with no consequences to plaintiff. It was the correctness of Buchanan's conclusions of the law arising upon the records as they really existed, that could alone affect the plaintiff. Being sued in his professional capacity, Buchanan is only answerable for the correctness of his conclusions. Defendants were not shown to be partners in the business of examining titles. Hovey was not liable in any event. The examination and report of Buchanan were a gratuity, in good faith, and the same was not a subject of partnership nor of joint liability. If Buchanan had reported that the supposed judgment was valid and a lien upon the land, he would have been guilty of culpable ignorance of the adjudications of an appellate court appointed by law to construe the very statute. under which this confession was made. (2 Kernan, 215, and cases above cited.) The report that Buchanan gave was one that a faithful and learned lawyer might well give upon full inspection of the records and a careful reading of the supposed judgment.

*Adams*, for defendant in error.

I. Negligence in failing to make proper examination of the records for judgments, and in failing to report the judgment against Abrahams, is the foundation of this action, and it was not the want of skill or ability in the defendants to make the examination or to decide upon the legal effect of such a judgment. There was a judgment in fact. It was the duty of defendants to report it to plaintiff. Then, if he had thought proper, he might have taken their opinion as to the effect of

19—VOL. XXVI.

such judgment; and if their opinion had been adverse to the validity of the judgment and the plaintiff had acted on their opinion, he might then have predicated an action upon the charge of a want of learning and skill in their profession; and the defence might have raised the question (which they now seek to raise and which is not in this record) whether it was not a matter of such doubt as to excuse them. They, however, failed to search the records. The question as to the validity of the judgment was not before them. If the judgment had been reported and an opinion given, plaintiff might or might not have relied upon it. Defendants were guilty of gross negligence in omitting to examine the records and in failing to report the existence of the judgment against Abrahams.

II. The judgment was a valid judgment. (Finley v. Caldwell, 1 Mo. 364; Phelps v. Hawkins, 4 Mo. 384; Hill v. Dowdall, 6 Mo. 198; 1 Terr. Law, 686; Geyer's Dig. 264; R. C. 1845, tit. Judgment.) Unless it was an absolute nullity it was the duty of defendants to report it to plaintiff. The validity of the judgment could not be questioned collaterally. So long as it existed on the records it would be a valid lien, and a sale under an execution would pass the title. (Brigg v. Adams, 2 Salk. 674; 17 Johns. 145; Rector v. Hart, 8 Mo. 448; 4 Bibb, 336.) The court had jurisdiction of the parties and of the subject matter, and the power to render the judgment and the supposed defect in the statement upon which the confession was made could only be inquired into in a direct proceeding to set aside the judgment. Even in such a proceeding this statement ought to be held sufficient. The decisions in New York are conflicting. (7 How. Prac. R. 448, 446, 62; 2 Kernan, 223.) But it is presumed that no court has held such a judgment an absolute nullity, or that its validity could be questioned collaterally.

SCOTT, Judge, delivered the opinion of the court.

This case, having been begun under the act of 1849, comes before us on the overruling of a motion for a review of the

finding of the facts, and also for a review of the law declared upon the facts.    Some of the facts found, which are sought to be reviewed, are mere conclusions of law from other facts in the finding, and will not be noticed in this place.

One important fact in the finding, the truth of which the defendant denies, was that the defendants were partners in, or that it was a part of their business, as partners, to examine the titles of real estate.    There was evidence tending to show that such was the course of business of the concern.    In addition to that set out in the motion for a review, is the conduct of Hovey, when application was made to him, in declining to undertake the examination himself, and in referring the agent of the plaintiff to the defendant Buchanan, who was a partner of Hovey in the practice of law; thus indicating that he did not decline for the reason that such employment was no part of the business of the profession or of the partnership.    Moreover, Hovey gave as the cause of his not undertaking the examination proposed by the agent of the plaintiff, that, at the time, he had other engagements.    This objection, if it could be sustained, would only relieve Hovey, who, we cheerfully say, does not appear himself to have been chargeable with the slightest blame in this transaction, except that which by implication of law arises from his association with his co-defendant Buchanan as partner.

Another objection to the finding is that the court found a material fact which was not in issue, to-wit, that the defendants were guilty of negligence in not examining in order to ascertain if there were encumbrances on the lands.    This fact, it is maintained, was not in issue and should not have a place in the finding.    The allegation in the petition is, that the defendants " were guilty of neglect and want of due diligence in examining into, and in the investigation of, the situation of said land and the title thereto."    The fact found by the court is, that the defendants failed to examine the records to ascertain if there were any judgments against said Abrahams in Jackson county; and from this failure the inference is drawn by the court that the defendants were guilty of negli-

gence in not examining to ascertain the existence of the said judgment. As there was a general allegation of neglect and want of due diligence in examining into the situation of the title to the land, and as it was necessary to look as well into the docket of judgments as the record of deeds in order to know the condition of the title, and as the record-book might have been examined whilst the judgment docket was over-looked, we are of the opinion that the allegation in the peti-tion warranted the court in making a finding as to the negli-gence of the defendants in failing to ascertain whether there were judgments.

The point mostly relied on by the defendants is that the confession of judgment, not having been taken in conformity to the provisions of the statute, is void, and created no en-cumbrance or lien upon the land; that—the statute requiring the facts, out of which the debt arose, to be concisely stated, and that it be shown that the debt is justly due, and these requirements not having been complied with—there was no authority in the clerk to take or enter the confession of judg-ment, and consequently his act was null and void. In the case under consideration, the only evidences of the debt accompanying the statement on which the confession was entered were two promissory notes, the consideration of which was not set out. It may be admitted that such a statement was insufficient under the statute. A statement upon which to enter judgment without action under the act of 1849 is not sufficient, where it merely states and sets out a promis-sory note, executed by the defendant to the plaintiff, as the consideration of the indebtedness. In New York, where there is a statute on this subject, from which it seems ours was borrowed, this principle seems to be well settled. (Chappell v. Chappell, 2 Kernan, 215.) But while we admit this to be the law, we are not prepared to say that a statement thus de-fective renders a judgment confessed upon it a nullity. We do not conceive that the doctrine in relation to powers or their execution has any thing to do with the question under consideration. To maintain that judgments thus confessed in

courts of general jurisdiction are nullities, would be affecting their validity to an extent beyond all reason. It would be giving those who have no interest in the transaction, and who can in no way whatever be affected by it, a power to defeat it. If all those who are in anywise interested in a judgment acquiesce in it, why should a stranger be permitted to call in question its validity ? Under the principle contended for, all those whose rights are affected by a judgment may acquiesce in it; land may be seized and sold under it without any objection by those who are interested; and yet if afterwards a stranger should enter on the purchaser, he could not be ejected, because the judgment being a nullity no sale under it would convey a title. When a judgment has been entered in a court of general jurisdiction, none of the cases cited go the length of maintaining that a defect in the statement under which it was confessed would render it wholly ineffectual and void for all purposes. The statement may be amended; the judgment may be reversed, vacated or set aside; but none hold that it is a nullity. When the general power of a clerk to take a confession of a judgment is conceded, why should that judgment, entered on the records of the court, be regarded otherwise than those rendered by the court in term time ? It is a judgment of a court of general jurisdiction, and until it is invalidated it will pass a title by a sale under it. The very case of Chappell v. Chappell, to which reference has been made for another purpose, is a strong one to show that, for a defect in the statement like that in the case before us, the judgment is not a nullity. To the same effect are the cases of Plummer v. Plummer, and Schoolcraft v. Thompson, 7 How. Prac. Rep. 62, 446. The cases of Parker v. Briggs, 1 Southard, 161, and Clever v. Applegate, 2 Southard, 479, were in relation to judgments confessed in an inferior court.

Another point in the cause is, that the judgment confessed, even though not void, is yet no lien; that the statute authorizing the taking a confession of judgment does not confer a lien on the lands of the defendant. We do not consider that

there is any force in this objection. The chief inducement to the taking a confession of judgment is the security it gives by reason of the lien. The lien of a judgment, according to the principles of the common law, is not created by the express words of a statute to that effect, but it is considered as an incident to the right to subject the land to execution. So soon as land was subjected to execution for debt, just so soon the courts held that the judgment was a lien. It will hardly be maintained that an execution could not be issued on a judgment confessed under our statute in relation to the confession of judgments without action. (Reed v. Austin, 9 Mo. 722.)

We are not of the opinion that the pleadings and evidence in the cause involve any question touching the skill of the defendants in their profession. The complaint is of negligence in performing an act which was undertaken to be done, whereby the plaintiff lost the security for his debt. If the existence of the judgment had been communicated to the agent of the plaintiff, he might have altogether refused the security offered. He might have been unwilling to incur any risk and would have held on to the possession of his goods. It is not for the defendants to fail to inform themselves of the existence of the judgment, and afterwards maintain that it was erroneous or irregular, or that there was or might be a question of its validity about which members of the profession might entertain contrary opinions. The judgment itself, as a fact, should have been sought after in the docket and a knowledge of its existence communicated to the plaintiff, who would then have determined for himself whether he would take the security.

There is no ground of complaint against the plaintiff because he did not communicate to the defendant the fact that his debt was not paid at maturity, and on account of his subsequent delay in enforcing its collection. Believing from the information of the defendants that his debt was secure, nothing was more reasonable than that he should rest satisfied until it was his pleasure to collect his debt. If he had not

been misled by the advice he received, no one possibly could have been injured by such a course, and it is not for those whose conduct was the cause of the delay afterwards to complain of it.

Judge Napton concurring, judgment affirmed.