## ELIZA B. FITHIAN, Plaintiff in Error, *v.* MONKS and BROOKS, Defendants in Error.

1. *Practice, Civil—Courts—Jurisdiction, how acquired—Service of Process.*— Jurisdiction over the party is acquired when the person is actually and personally served with process within the territorial limits of jurisdiction, or where he appears and, by his pleadings, admits the jurisdiction. Jurisdiction of the cause is the power over the subject matter given by the laws of the sovereignty in which the tribunal exists.

2. *Mortgage—Petition for foreclosing, a statutory and not an equitable proceeding.*—It is well settled that a petition for the foreclosure of a mortgage, under the statute, is a proceeding at law and not a proceeding in chancery; and the jurisdiction is to be exercised, not according to the doctrines and practice of equity, but according to the practice and principles of law. (Statutes collated.) Section 18, pp. 1090–91, R. C. 1855, which declares that proceedings under the statute shall conform, as near as may be, to the proceedings in ordinary civil actions, is not to be understood as intending to abolish the distinction between a statute proceeding at law and a petition in the nature of a bill in equity to foreclose a mortgage.

3. *Mortgage, foreclosure of—Judgment over, personally, against defendant, a statutory judgment.*—Where the petition for the foreclosure of a mortgage, which prayed that, if the mortgaged premises were insufficient to satisfy the mortgage debt, judgment over might be rendered personally against the debtor, and judgment rendered thereupon awarded execution, in case the mortgaged premises should be insufficient to satisfy the debt, "against the other goods, chattels, lands, and tenements" of defendant: *held*, that such prayer and judgment showed the proceedings foreclosing the mortgage to be under the statute, and not in equity.

4. *Mortgage—Assumption of mortgage by vendee of mortgagor—Judgment against vendee, effect of.*—In case of sale of the mortgaged property to a third party, even though the vendee expressly assumes, as a part of the consideration of the purchase, to pay off the amount of the mortgage, judgment for a residue of the debt unsatisfied by the mortgage estate cannot be rendered against him personally in this State. The equity doctrine that such a contract of the vendee with the mortgagor amounts to an additional security taken by the latter, and inures to the benefit of the mortgagee by equitable subrogation, cannot hold under the laws of Missouri. (R. C. 1855, ch. 113,

§ 11.)  Such vendee is in no sense a mortgagor, either by subrogation or otherwise.  As the proceeding for foreclosure in such case is purely statutory, the remedy cannot be extended beyond its provisions, and it authorizes in no instance a personal judgment over for the residue, where a deficiency occurs, except in the case of the mortgagor.

5.  *Judgments, value of, when proceedings are coram non judice—Erroneous judgments, value of.*—Where there is no authority in a court to act—where its proceedings are *coram non judice*—then they are null and void; and, in case of judgments rendered thereon, no title passes by virtue of the execution.  And if a judgment is void, advantage can be taken of it in any collateral proceeding.  But whenever it appears that a court possessing judicial powers has rightfully obtained jurisdiction of a cause, all its subsequent proceedings are valid, however erroneous they may be, until they are reversed on error or set aside by some direct proceedings for that purpose.  A judgment in proceedings to foreclose a mortgage, rendered against the mortgagor and his vendee, who had assumed, as part consideration of the purchase, to pay off the encumbrance, so far as it affected the vendee personally or his separate estate not included in the mortgage, was not merely erroneous, or voidable and reversible on error, but was an absolute nullity, and no title passed by a sale of his estate under the judgment.

### *Error to St. Louis Circuit Court.*

This was an action of ejectment, commenced March 4, 1866, in the St. Louis Circuit Court, by the plaintiff in error, to recover the possession of a lot of land in the city of St. Louis.

On the trial it was admitted that the plaintiff was the former owner of the lot in question, and was entitled to recover unless her title was divested by a sale under execution in the case of Mason v. Barnard and Fithian, under which sale the defendants were holding the land.

The case of Mason v. Barnard and Fithian was a suit in the St. Louis Circuit Court, commenced December 12, 1861, to foreclose a deed of trust, in the nature of a mortgage, executed by Barnard to Catherine Graham, in which suit it was alleged that Mrs. Graham had transferred her rights as mortgagee to Mason, and Barnard had assigned all his interest in the mortgaged premises to Mrs. Fithian, under an agreement on the part of Mrs. Fithian to pay off and discharge the mortgage debt.  Process was duly and regularly served on both Barnard and Mrs. Fithian, and, as neither appeared, judgment by default was taken against them, and at the second term a final judgment was rendered in the suit.

The following abstract of the proceedings in the suit of Mason v. Barnard and Fithian contains all that is material to the present inquiry:

The petition states that Catherine Graham, by deed dated May 9, 1859, for the consideration in the petition mentioned, did bargain, sell, and convey to the defendant Joseph S. Barnard certain real estate in the city of St. Louis (a description of which is given); that the consideration was $3,190.83, part of which was paid in cash; and that for the balance of $2,811.72 Barnard executed and delivered to said Catherine Graham five negotiable promissory notes of the same date as the deed, payable to his own order, and by him indorsed for the sums and at the times following: one for $319.80, at six months after date; and four notes, each for $638.16, respectively at one, two, three, and four years after date, all bearing interest at the rate of six per cent. per annum from date; that in order to secure the payment of the said notes, and the interest that might accrue thereon, to the said Catherine Graham or the holder thereof, and for the consideration of one dollar, the said Barnard conveyed the said premises to the defendants Garland and Priest, in trust, with a provision that if the said notes should be paid when due the deed should be void. That it was in and by the said deed stipulated and agreed that if default should be made in the payment of the said notes or the interest thereon, or any part thereof, all of the said notes, at the option of the holder thereof, might be considered as due, and in that case the trustees might, without waiting for the maturity of any of the other notes, proceed to sell the property at public auction, and from the proceeds, after paying costs and expenses, pay all of the said debt remaining unpaid, with the interest thereon, the balance to be paid over to Barnard or his legal representatives. That it was also agreed, in and by the said deed, that in case any of the notes should remain unpaid after maturity, the same should bear interest at the rate of of ten per cent. per annum. That, by deed dated June 13, 1859, Barnard did grant, bargain, sell, and convey the above, together with other property, to the defendant Eliza B. Fithian; "that by the terms of the said conveyance the said Eliza did expressly assume and agree to pay off and discharge the amount of the said encumbrance or deed of trust upon the said premises, as a part of the consideration or purchase money therefor." That the said Catherine Graham delivered the said three notes last above mentioned, payable respectively in two, three, and four years after date, to the plaintiff, whereby he became and is the legal holder and owner thereof, and is entitled to the moneys due thereon, and to enforce the said deed of trust. Avers that, "although the note at two years long since became due and payable, no part of the principal or interest thereof, or of either of the other two of the said notes, has as yet been paid; and the plaintiff therefore elects to consider the notes above mentioned, payable in three and four years, immediately due and payable, in accordance with the terms of the said deed of trust."

Prayer: "That the defendants and each of them may be foreclosed of all interest, lien, and equity of redemption in the said premises, and that the same may be sold and the proceeds be applied to the payment of the costs of the action and the amount due on the said notes, under and according to the terms

Fithian v. Monks et al.

of the said deed of trust, with interest up to the time of payment; and that if the money arising from the sale of the said premises should be insufficient to pay the amount due and coming to the plaintiff on account of the said debt, on the ascertainment of such deficiency the plaintiff may have a judgment personally against as well the said Eliza B. Fithian as the said Joseph S. Barnard, for the amount thereof, together with interest and costs of suit, or for such other and further relief as the court may deem proper."

At the February term, 1862, defendants Garland and Priest put in a formal answer; and against the defendants Barnard and Fithian, who were personally served with process, judgment by default was taken, which was perfected at the succeeding October term of court. The judgment was rendered October 23, 1862, for $2,311.37.

JUDGMENT. — "And now on this day, this cause coming on for trial, and the petition of the plaintiff having heretofore been taken as confessed against the defendants Joseph S. Barnard and Eliza B. Fithian, who, although duly summoned, failed to appear and answer the same, and all of the said defendants now failing to appear, on motion of plaintiff's attorney the same is submitted to the court for trial upon the pleadings, exhibits, and proofs. And the court having duly heard and considered the same, and it appearing therefrom that the plaintiff is entitled to the judgment asked for in his petition, and proceeding to ascertain the amount due and payable to the plaintiffs by the defendants Joseph S. Barnard and Eliza B. Fithian, for the debt mentioned in the said petition and the deed of trust therein set forth, and interest thereon to the date hereof, the court doth find the same to be the sum of $2,311.37. The court doth therefore order, adjudge, and decree that the plaintiff do recover of the said Joseph S. Barnard and Eliza B. Fithian the said sum of money, together with legal interest thereon from the date hereof, and costs of this suit, to be levied of the following real estate and premises, contained and described in the deed of trust set forth in the said petition as, etc. [*describing.*] And it is further ordered, adjudged, and decreed, that if the said real estate and premises be not sufficient to satisfy the said debt, interest, and costs, then the residue shall be levied of other goods, chattels, lands, and tenements of the defendants Joseph S. Barnard and Eliza B. Fithian. And it is further ordered and adjudged that a special writ of *fieri facias* do issue, directed to the sheriff of the county of St. Louis, in conformity hereto."

On this judgment a special execution was issued conformably to the judgment and the statute in relation to the foreclosure of mortgages. The plaintiff takes an exception to the execution, in this: that this judgment, as recited in the execution, expresses the amount of the costs in dollars and cents, and so departs from the language of the judgment as entered on the record.

Under this execution the sheriff sold the mortgaged premises; and the amount realized being insufficient to satisfy the mortgage debt, he levied upon, advertised, and sold the lot of land now in

controversy, then belonging to Mrs. Fithian, one of the execution debtors. This sale took place February 16, 1863, and Benjamin Hood became the purchaser, at the sum of $1,600, and a formal, regular deed was made to him by the sheriff. No exceptions are taken to the proceedings of the sheriff in the conduct and consummation of the sale.

The tenants of Mrs. Fithian in possession of the lot then sold, upon receiving from Hood notice of the sale, attorned and paid rent to him. Hood remained in possession of the lot by his tenants until July 26, 1864, when he sold the lot to Monks for the price of $7,000. Since the last-mentioned date, Monks has been in possession.

Mrs. Fithian sued out a writ of error to this court in the before-mentioned suit in favor of Mason, and the judgment below was reversed and the suit remanded for further proceedings. The case is reported in 36 Mo. 384.

Thereupon the present suit was commenced. The court below decided that the reversal of the judgment in Mason v. Barnard and Fithian did not affect the title of an innocent purchaser at sheriff's sale under the judgment, and gave judgment for defendants.

*T. T. Gantt*, for plaintiff in error.

The judgment over against Eliza B. Fithian was an absolute nullity. It was an entirely different judgment from that asked for in the petition. It was wholly unwarranted, either by the rules of chancery practice or by our own statute respecting mortgages and deeds of trust. It was a judgment rendered without any notice to the defendant, Fithian, that any such judgment was asked or was possible, and was in flat violation of every rule of law and common right. (Mason v. Bernard and Fithian, 36 Mo. 384–392; R. C. 1855, p. 1089, §§ 1011–1014; Riley's Adm'r v. McCord, 24 Mo. 265; Simonson v. Blake, 20 How. Pr. 482; Janney v. Spedden, 38 Mo. 395, 401, 402.)

If the proceeding to foreclose the mortgage (deed of trust) had been an equitable suit, according to the old chancery practice the only judgment could have been for a foreclosure of the mortgage

and a bar of the equity of redemption. In such a case no judgment over could, in the nature of things, have been given against the mortgagor; and it has been held (Riley v. McCord, 24 Mo. 265) that such a judgment would be completely beyond the powers of a court of equity. But our statute gives a remedy, which is in many particulars an improvement on the old chancery mode of foreclosure; and part of this remedy is a judgment over against the mortgagor for any deficiency of the mortgaged property to pay the debt. Being statutory, all the rules and incidents of the proceeding must be looked for in the act which defines the powers of a court of law in such cases. In some States the Legislature has permitted the court to give a judgment over for the deficiency (when ascertained) against any party to the proceeding to foreclose, good cause being shown therefor in equity. (20 How. Pr., *supra.*) But such a power is not to be found in the statute. "The mortgagor and the actual tenants or occupiers of such real estate shall be the defendants;" but the plaintiff may may make or omit to make "all encumbrancers or persons having an interest existing at the commencement of the suit, subsequent as well as prior in date to the plaintiff's mortgage," parties to the proceeding. (R. C. 1855, p. 1087, §§ 1, 7.) If he makes them parties, they are bound by the judgment. If he omits them, they are not bound. This enactment was, it is notorious, inspired by the decision in the case of Russell v. Mullanphy, 4 Mo. 319.) Under it, however, none (it is presumed) ever supposed that any judgment beyond one of foreclosure, as to the mortgaged premises, could be rendered against such subsequent encumbrancer. In case the mortgagor is not personally summoned, but merely notified by publication, the judgment for the plaintiff shall merely be a special one against the mortgaged premises. (R. C. 1855, pp. 1087-8, § 10.) Though persons claiming an interest under the mortgagor may be personally served, no judgment (except, of course, one of foreclosure) can be rendered against them. If, however, the mortgagor be personally served, the judgment shall be, "as in the preceding section, specified, with the addition that if the mortgaged property be not sufficient to satisfy said debt and damages, or damages and costs, then the

residue to be levied of other goods, chattels, lands, and tenements of the said mortgagor"—not of "any vendee of said mortgagor," or "of any other of the parties to the foreclosure," as the New York statute provides, but "of the said mortgagor" only. (*Id.* § 11.)

The statute of 1835 provides for an order for the sale of the mortgaged premises to satisfy the amount found due. Upon this order the mortgaged premises shall be sold, and a return made of the sale; and if the whole of the mortgaged property do not sell for a sum sufficient, an execution may be issued against defendant, as in other actions at law. This execution could only issue after the sale of the mortgaged premises, *ex necessitate*. (R. S. 1835, p. 410, §§ 8, 9, 12.)

In 1845 it was provided that the judgment should be given for the amount of the mortgage debt, with the addition that, if the property mortgaged was insufficient, the residue might be levied of other goods, chattels, lands, and tenements of the "said debtor"—the meaning of which could only be the "said mortgagor." (R. S. 1845, p. 751, § 12.) Under the statute a provisional judgment could for the first time be rendered against the mortgagor at the time when an order was made for the sale of the mortgaged premises.

The language of the act of 1855 is still more precise. Section 11 uses the word "mortgagor," instead of "defendant," as in 1835, or "debtor," as in 1845. Under this act no judgment over can be given against any one but the person who executed the mortgage, or his executor or administrator.

*Field, Hamilton & Gray*, for defendants in error.

The title of the purchaser at the execution sale was not at all affected by the reversal of the judgment on which the execution issued. (Manning's case, 8 Co. 191.) This rule has been repeatedly recognized and acted on by this court. Thus, in McNair v. Biddle, 8 Mo. 264, it is said by this court: "It must be conceded that no title passes under or by virtue of an execution issued on a void judgment; and if a judgment is void, advantage can be taken of it in any collateral proceeding. But

it is equally clear that if a court of record has jurisdiction of the subject matter, and the party defendant has notice of the proceedings against him, he is bound by them, however irregular or erroneous they may be; and until direct proceedings are had on the judgment itself, to vacate it for irregularity or reverse it for error, it is binding and conclusive on all parties and privies thereto in any collateral proceeding; and rights and titles acquired by virtue of an execution issued on such judgment will be protected by all courts. This is a principle of our jurisprudence which has been steadily maintained from a deep conviction of the mischiefs which would ensue from the least relaxation of it." (Jones v. Talbot, 9 Mo. 124.) In Coleman v. McAnulty, 16 Mo. 173, 176, the court says: "It is unquestionable law that a writ, regular on its face, emanating from a court of superior jurisdiction, is a justification to the officer acting under it; and it is a general rule that wheresoever an officer can justify under a writ, he can pass a title by a sale under it, if all other prerequisites to a sale have been complied with." It is worthy of remark that all the cases agree that the protection of the purchaser is coextensive with that of the sheriff; so that in all cases where the judgment is void as to the purchaser, the sheriff is liable as a trespasser for serving the process, and, it may be added, the judge who rendered the void judgment is also personally responsible for all the consequences of his act. The judgment was not void, but at most erroneous and irregular. This proposition is equivalent to the statement that the Circuit Court giving judgment in the case of Mason v. Barnard and Fithian had competent jurisdiction to render the judgment. For it would be contradictory and absurd to declare a judgment void which was rendered by a court of competent jurisdiction.

In general, the jurisdiction of a court depends on two circumstances: 1. The service of process or other notice to the defendant in the action, by which he becomes amenable to the judgment of the court. 2. That the subject matter of the action is within the authority of the court to hear and determine. In regard to the first, no controversy exists here. The defendants were duly served with regular and formal process. The

33—VOL. XLIII.

other point is likewise free from doubt. The constitution of the State vests in the Circuit Court "exclusive, original jurisdiction in all civil cases, until otherwise directed by the General Assembly." It is not pretended that the General Assembly has ever withdrawn the foreclosure of mortgages from the jurisdiction of the Circuit Court. On the contrary, a particular statute has confirmed that branch of jurisdiction in the Circuit Court. It may be added that this court, in remanding the case of Mason v. Barnard and Fithian to the Circuit Court for further proceedings, pointedly affirmed the jurisdiction of that court over the subject matter of the action. It is obvious that the general jurisdiction of the Circuit Court cannot be disputed. The real point of the objection taken by the plaintiff in error is that the judgment, under the particular circumstances, was not warranted by the law. But this is saying no more than that the judgment was erroneous. Error consists in the departure from the rule of the law. The great body of the common and statute law defining and regulating the rights and duties of action, and prescribing the practice and procedure in suits, is no limitation on the jurisdiction of the courts, but constitutes rules of decision addressed to the courts, to be by them interpreted and applied. If these rules are misrepresented or misapplied, the judgment is simply erroneous. In determining the jurisdiction of a court, the question whether or not the judgment be conformable to the law is wholly foreign to the inquiry. If the court have no jurisdiction, its judgment is equally void, whether in itself it be agreeable or repugnant to the law. It was said by the court, in Wertheimer v. Boonville, 29 Mo. 258, "it is hard to conceive how the question of jurisdiction can be made to depend on the fact whether the judgment was right or wrong." So, in Davis v. Packard, 10 Wend. 71, Senator Seward forcibly expressed the same truth: "The power to decide correctly, and to enforce a decision when correctly made, necessarily implies the same power to decide incorrectly and to enforce a decision when incorrectly made." So, in Colton v. Beardsley, 38 Barb. 51, the court said: "The test of jurisdiction is whether the court has power to enter on the inquiry, and not whether its decision be right or wrong."

(1 Hawkins's Pleas of the Crown, p. 80; The Case of Watkins, 3 Pet. 203.)

It is manifest from these authorities that when a judgment is attacked collaterally, on the ground of a want of jurisdiction in the court to render it, the inquiry must be not whether, under the particular circumstances, the judgment was warranted by the law, but whether, under any circumstance, the court was vested with authority to render such judgment. And this distinction has been adopted by this court and steadily adhered to. (Perpetual Ins. Co. v. Ford, 11 Mo. 295; Coleman v. McAnulty, 16 Mo. 173; Gilman v. Hovey, 26 Mo. 288; Latrielle v. Dorleque, 35 Mo. 236; Martin v. Barron, 37 Mo. 305.) The case of Janney v. Spedden, 38 Mo. 395, is relied upon by the plaintiff in error as an authority in her favor. An examination of that case will show that it turned upon a principle having no application to the case now before the court. There was no service of process on the defendant in Janney v. Spedden. He was a non-resident, and the only notice to him was by order of publication. Now, in Smith v. McCutcheon, 38 Mo. 416, it was decided that an order of publication gave the court no jurisdiction *in personam*, and that a general judgment rendered upon such an order was invalid. After the order of publication, the plaintiff dismissed so much of his petition as sought to enforce his lien, and took a general judgment for his debt against the defendant *in personam*. In holding the judgment invalid, the court did no more than apply the principle established in Smith v. McCutcheon. In the present case the process was duly and regularly served on the defendants, and obviously the cases just cited have no application to it.

One ground on which the judgment in favor of Mason v. Barnard and Fithian was reversed in this court was that the lower court held Mrs. Fithian liable for any deficiency of the mortgage security; in other words, decided that she was responsible as mortgagor. The first section of the Revised Code of 1855, in relation to mortgages, which was in force when Mason's suit was brought, was adopted into the statute law of this State more than thirty years ago. The practical construction of the act has always

been that an assignee of the mortgagee is within the meaning of the act, and entitled to sue as a mortgagee. This construction has been acquiesced in, and seems to be reasonable; for the act is remedial, intended to relieve creditors from the inconveniences of the old practice, and ought to be liberally interpreted. Now, it is not perceived why, when a person voluntarily puts himself in the place of the mortgagor and assumes his responsibilities, he should not, by a parity of reason, be held liable as mortgagor.

It is objected that the petition in the case of Mason v. Barnard and Fithian unites a claim to relief in equity with the statutory proceeding of foreclosure, in a manner not permitted by the rules of practice. This objection is believed to be without foundation. Under the old practice, the powers of the courts of equity were in general limited by its rules to a simple decree of foreclosure, the effect of which was to vest the title of the mortgaged property absolutely in the mortgagee, who was then left to pursue his remedies at law. It is not correct, however, to say that a court of equity had no jurisdiction to give a remedy over for a deficiency of the mortgage security. In general, such a decree would be a departure from the settled course of the court, and would call for a reversal of a decree on appeal or review; but there is no authority for saying that the decree would be void. In special cases, however, courts of equity would give a remedy for a deficiency in the security; and that in the foreclosure suit. One of those cases was in the instance now before the court. Where the mortgagor had transferred the mortgaged premises to a third person, and the latter had undertaken to pay the mortgage debt, equity would decree the payment of the mortgage debt by such third person, upon a long-established principle of equity jurisprudence. In such case, by the old rule of the common law, the promise could not be enforced at law by the mortgagee, for the scholastic reason that he was not privy to the consideration. But in equity the creditor was subrogated to the rights of the debtor as to all collateral securities obtained by the latter for the debt. And accordingly, in a suit for foreclosure, when the court has before it the party who is equitably liable for the debt, the court will charge him with the payment of the deficiency, and

thus give effect to another maxim — that courts of equity will always do complete equity to the parties without driving them to a new suit. (Klapworth v. Dressler, 2 Beasely, 63; King v. Whitely, 10 Paige, 468; Halsey v. Reed, 9 Paige, 446.)

Under the state of the law that has just been explained, the Legislature of Missouri introduced a new method of foreclosure by petition to the Circuit Court, resulting in a judgment of foreclosure and a sale on execution of the mortgaged premises to satisfy the debt. This method was first introduced in 1807, and, with some changes in its particular provisions, has remained in force ever since. In 1835 it was first provided that, for any surplus of the debt which the mortgaged premises were insufficient to satisfy, a general execution might issue against the mortgagor. In the revision of 1845 the provision first came that judgment should be rendered for the deficiency; and it is remarkable that that statute requires that the judgment for the deficiency and the execution should be against the debtor. If that phraseology had been retained in the subsequent revision of the statutes, Mrs. Fithian, who had voluntarily become the debtor, could not have evaded responsibility under the plea that she was not the mortgagor. In 1855 the revisers substituted the word "mortgagor" for "debtor;" and, although it is probable the change was accidental, without any intent to alter the force of the provision, it has furnished the other side with a plausible ground for verbal criticism. But there is one consideration that decisively shows that under the present statute the term "mortgagor" must be taken as meaning no more than "debtor." It is very common for one person to mortgage his property to secure a debt due by another. In such case the property mortgaged is liable for the debt, but the mortgagor is not; for, beyond the property mortgaged, he has not undertaken that the debt shall be paid. The remedy over, therefore, cannot be applied to him, although he is strictly the only mortgagor. This case, which is of very common occurrence, illustrates the danger of being misled in following the words of a statute and disregarding its spirit.

In this connection it is proper to say that the old rule of the common law, above alluded to, to the effect that, where one makes

a promise to a second for the benefit of a third person, the last cannot enforce this promise at law, no longer prevails. And courts of law do now afford a remedy just as ample as courts of equity. (Lawrence v. Fox, 20 N. Y. 268 ; Burr v. Beers, 24 N. Y. 179 ; Thompson v. Thompson, 4 Ohio St. 333.) From what has been presented, it is manifest that, in any aspect of the case, the petition in Mason v. Barnard and Fithian was strictly conformable to the rules of pleading. If Mrs. Fithian was regarded as a mortgagor, she was properly chargeable as such under the statutory proceeding. But if she were not to be considered as mortgagor, but only liable as an ordinary debtor to pay the mortgage debt, then, as she was a necessary party to the foreclosure suit, it was proper in such suit to take a judgment against her upon such liability.

There is another point made by the plaintiff in error, which strikes at the validity of the proceedings instituted by Mason to foreclose the mortgage. It may be stated in its full force in these words : The statutory proceeding of foreclosure is the exercise of a new, special, limited jurisdiction, created only for special cases, and applicable to none other ; that to make such proceedings valid, the special circumstances for which this particular jurisdiction was created must actually have existed ; and the jurisdiction is limited to such cases, and can extend to no others, and if, in any case, the jurisdiction be otherwise applied, the whole proceedings are *coram non judice* and void. In other words, the jurisdiction of the court in the foreclosure suit against defendant depended on the question whether Mrs. Fithian was mortgagor ; and if she were really not such, the judgment was void. This objection is founded in delusion. The statute in relation to mortgages creates no new jurisdiction. Properly speaking, it is a practice act, regulating the proceedings of the court in the exercise of one branch of its general jurisdiction. No one supposes that our new practice act, that authorizes the prosecution of all causes of action by simple petition, has of itself conferred any new jurisdiction or substantially changed the character of the courts. (Kempe v. Kennedy, 5 Cranch, 173 ; Harvey v. Tyler, 2 Wall. 328.)

WAGNER, Judge, delivered the opinion of the court.

A re-hearing* was granted in this case at the March term, 1868, and it has now been reargued with great thoroughness and ability by the respective counsel on each side. It may be stated at the outset that the case is one of considerable difficulty, and it is not easy on all occasions to clearly mark the line of distinction existing between erroneous and irregular — voidable and void — judgments. The controlling question is whether the judgment that was rendered in the St. Louis Circuit Court on foreclosure of mortgage in the case of Mason v. Barnard and Fithian (the record of which was offered in evidence), so far as it affected the defendant Eliza B. Fithian and her estate, was absolutely void, or was merely voidable and reversible for error.

And this brings up the question whether the court had jurisdiction—first, of the party; and second, of the subject matter. Jurisdiction over the party is acquired where the person is actually and personally served with process within the territorial limits of jurisdiction, or where he appears and by his pleadings admits the jurisdiction. Jurisdiction of the cause is the power over the subject matter given by the laws of the sovereignty in which the tribunal exists.

As regards the party, the record shows that Mrs. Fithian was duly served with process, and therefore brought before the court according to the rules of law. There can be no question of the court having obtained a lawful jurisdiction of the person. The point, then, which presents the ground for contention in the case (and it is a matter of grave inquiry) is whether jurisdiction over the cause or subject matter was acquired, as far as Mrs. Fithian's separate estate was concerned, and which was not included in the mortgage.

Upon the foreclosure of the mortgage in the original suit, the statute authorized the plaintiff to make her a defendant. ( R. C. 1855, ch. 113, § 7.) In order to apprehend and fully

---

* As the opinion rendered on the re-hearing embraces an examination of the whole case, it is unnecessary to insert the original opinion delivered by Judge HOLMES at the March term, 1868.

understand the merits of the case, it will be not only convenient, but necessary, to consider the true character of the petition.

Its examination leaves no room to doubt that it was a petition under the statute to foreclose a mortgage. It was not, nor did it purport to be, either a proceeding or bill in chancery. The statements in the petition constituted a cause of action under the statute which might entitle the plaintiff to relief in accordance with its provisions. Besides the allegations or averments that were proper for this purpose, the petition contained in the same count — there being but one — this statement: "That, by the terms of the said conveyance, the said Eliza did expressly assume and agree to pay off and discharge the amount of said encumbrance or deed of trust upon the said premises as a part of the consideration or purchase money therefor." The instrument contained a recital which tended to support this averment. It had never been executed by Mrs. Fithian, the grantee, but she had accepted the conveyance. In addition to the prayer for such relief as the court might have been authorized to grant under the statute in such a proceeding, there was also a prayer "for judgment over, personally, against as well the said Eliza B. Fithian (the vendee) as against Barnard (the mortgagor), for any deficiency on a sale of the mortgaged property, together with interest and costs." On this petition the court gave judgment in favor of the mortgagee, plaintiff in the action of Mason v. Barnard and Fithian, against both the mortgagor and his vendee, for the amount of the mortgage debt, together with an order of sale of the mortgaged premises; and a further order that, if there were a deficiency at the sale, the residue should be levied of the other goods, chattels, lands, and tenements of both the mortgagor and the vendee; and it was under this judgment that the land in controversy, which was not embraced in the mortgage, was levied upon and sold as the property of the defendant Fithian — plaintiff here; and the defendant in this suit claims under the sheriff's deed.

It will thus be seen there was a combination of matters of law and matters of equity in the petition and in the same count. By the constitution of the State, "the judicial power as to matters

of law and equity" was vested in the Supreme Court, the Circuit Courts, and such inferior tribunals as the General Assembly might establish. (Const., art. V, § 1, R. C. 1855, p. 76.) By statute, "exclusive original jurisdiction in all civil cases, where not cognizable before the county courts and justices of the peace, and not otherwise provided by law," was vested in the Circuit Courts. (R. C. 1855, p. 533, § 8.) And a further and special jurisdiction was conferred upon the Circuit Courts by the act concerning mortgages. (R. C. 1855, ch. 113.)

The whole course of judicial decisions in this State has recognized the distinction between matters of law and matters of equity, and the courts have uniformly been considered as having a law side and an equity side in reference to this general jurisdiction. To give the court jurisdiction in equity, a case in equity must be stated in the petition; and to give a jurisdiction at law, a cause of action at law must be set forth. Now, it has been repeatedly decided in this court, and it must be considered as settled, if a consistent line of decisions can be considered as settling anything, that a petition for the foreclosure of a mortgage, under the statute, is a proceeding at law and not a proceeding in chancery, and that the jurisdiction is to be exercised not according to the doctrines and practice of equity, but according to the practice and principles of law.

This statute was first enacted when Missouri was a territory, and when there were no courts of chancery, and it was provided that the cause should proceed "as in ordinary cases at common law." (Carr v. Holbrook, 1 Mo. 240; Thayer v. Campbell, 9 Mo. 281.) The amendment of 1839 and the revision of 1845 provided that the courts should proceed in these cases as in other actions at law, but that nothing contained in the statute should prevent the party from proceeding, in a court of chancery, to foreclose a mortgage according to the course of proceeding in chancery in such cases. (Laws of Mo. 1839, p. 82; Rev. Stat. 1845, p. 952.) The new practice act of 1849 in a measure assimilated the forms of proceedings in cases at law and in equity, and the revision of 1855 substituted in the act relating to mortgages, in place of the former provisions on this subject, a

clause to the effect that in suits under the statute "the proceedings shall conform as near as may be to the proceedings in ordinary civil actions." (R. C. 1855, pp. 1090–91, § 18.) This provision is not to be understood as intending to abolish the distinction between a statute proceeding at law and a petition in the nature of a bill in equity to foreclose a mortgage. It has been expressly so decided by this court since the new code of practice was adopted. (Riley v. McCord, 24 Mo. 265; Mason v. Barnard, 36 Mo. 384.) There have been numerous decisions to the like effect in reference to the general jurisdiction in cases at law and in equity.

In Riley v. McCord it was held that although a petition for a foreclosure of mortgage might be addressed to the judge "in chancery sitting," and the petitioner styled "your orator," and the prayer, that "a writ of subpœna issue," yet that if, in accordance with the prayer of the petitioner, a judgment or decree was rendered that the equity of redemption be foreclosed and the mortgaged premises sold — and, if not sufficient to satisfy the mortgage debt, a general judgment over — it was to be regarded as a statutory foreclosure, and, notwithstanding it contained some of the elements of a bill in equity, it must be considered as an action at law, and not a proceeding in equity. The court pointedly remarks: "Had the proceeding been in chancery, there is a part of the judgment which it is not competent for such a court to give. The judgment, in default of the mortgaged premises satisfying the mortgage debt, awards a general execution against the lands and goods of the debtor. A court of equity has no authority to enter such a decree on a bill to foreclose a mortgage. If the mortgaged property will not satisfy the debt for which it was pledged, the remedy of the party is an action at law for the remainder of it." This is clear law, and we think decisive as to the question whether the proceeding to foreclose the mortgage was under the statute or in equity. In Mason v. Barnard it was held that this very petition was a proceeding strictly according to the statute, and was not in the nature of a bill in equity; that the proceeding was not to be governed by the rules of proceedings in chancery; that the equity doctrine of subrogation had no

application, and that no chancellor, exercising exclusively equitable powers, would have been justified in giving such a decree as that which was rendered upon this petition ; and it was said that this distinction had not, it seems, been altered by the code allowing legal and equitable remedies to be joined ; and it was decided that this judgment over against Eliza B. Fithian, personally, was " erroneous and irregular." The further question, whether it were an absolute nullity and void for want of jurisdiction, was not necessarily involved, and was not determined.

In New York, on a bill filed for the satisfaction of a mortgage, it is the practice to decree payment by the mortgagor, or by any other person who may have become security for the payment of the debt, of the balance of the debt remaining unsatisfied after the sale of the mortgaged premises. This is done, however, by virtue of the express provisions of their statute. (2 Rev. Stat. p. 191, §§ 152, 154.) The statutory foreclosure appears to be a proceeding in chancery, and the court gives a personal judgment against the vendee of a mortgagor, based upon the equity doctrine that such contract of the vendee with the mortgagor amounts to an additional security taken by him, and inures to the benefit of the mortgagee by equitable subrogation. (Burr v. Beers, 24 N. Y. 178 ; Curtis v. Tyler, 9 Paige, 432 ; Halsey v. Reed, id. 446 ; March v. Pike, 10 Paige, 595 ; Blyer v. Monholland, 2 Sandf. Ch. 478 ; King v. Whitely, 10 Paige, 465 ; Trotter v. Hughes, 2 Kern. 74 ; Vail v. Foster, 4 Comst. 312 ; Belmont v. Conran, 22 N. Y. 438.) But in that State, independent of statutory provision, the rule of equity is that a bill to foreclose is in the nature of a proceeding *in rem*, and the party is confined in his remedy to the pledge. The suit is not intended to act *in personam*. (Dunkley v. Van Buren, 3 Johns. Ch. 331, per Kent, Chancellor.)

The courts of Iowa seem to proceed in like manner and upon similar grounds under the statutes of that State. (Corbett v. Waterman, 11 Iowa, 88 ; Thompson v. Bertram, 14 Iowa, 476.)

So, in New Jersey, under their system of equity law, it is held that where one purchases land, and assumes in his deed to pay off a bond and mortgage of his grantor, to which such land

is subject, he thereby becomes a surety in respect to the mortgage debt, and that the obligation of the purchaser to pay the debt inures to the benefit of the mortgagee, and he may enforce it against the purchaser to the extent of the deficiency in a bill to foreclose. (Klapworth v. Dressler, 2 Beasely's Ch. 62.)

It is obvious that the above principles can have no application here, as it is clear that no such thing could have been done without the exercise of chancery powers, nor with such powers without the further jurisdiction and authority which were given to the courts by statute. No such additional jurisdiction and power were conferred upon the courts of this State by our special statute. It authorizes the residue to be levied on the goods, chattels, lands, and tenements of the mortgagor, but not upon those of any other party. (R. C. 1855, ch. 113, § 11.) This vendee was in no sense a mortgagor under the contract or by subrogation, or otherwise, either in law or in equity; nor is the equity jurisdiction, where it exists, exercised on the ground that the vendee in such case has thereby become a mortgagor. As the proceeding is purely statutory, the remedy cannot be extended beyond its provisions, and it authorizes in no instance a personal judgment over for the residue where a deficiency occurs, except in the case of the mortgagor. But it is contended in the argument that though the judgment may have been wrong, still it was binding and valid till reversed on error, and that an innocent purchaser acquiring title under it, while it remained unreversed, should be protected. The operation and effect of judgments that are erroneous merely, but binding and conclusive until reversed for error, and judgments that are absolutely void for want of jurisdiction over the party or over the subject matter, has often been before the courts, and has been very clearly defined in many cases.

The subject has been thus treated by this court: "Where there is no authority in the court to act—when its proceedings are *coram non judice*—then they are null and void; but when the court has jurisdiction, however erroneous or irregular its proceedings may be, they are regarded as valid and binding until they have been reversed or annulled by suitable proceedings instituted

Fithian v. Monks et al.

for that purpose, and titles acquired by sales under them will be protected. (Jones v. Talbott, 9 Mo. 123; Coleman v. Mc-Anulty, 16 Mo. 173; Chouteau v. Nuckolls, 20 Mo. 445; Shields v. Powers, 29 Mo. 315, 34 Mo. 188.) In McNair v. Biddle, 8 Mo. 264, where the same rule is clearly laid down and defined, it was conceded that "no title passes under or by virtue of an execution issued upon a void judgment; and if a judgment is void, advantage can be taken of it in any collateral proceeding."

In Janney v. Spedden, 38 Mo. 395, it was decided that the sheriff's deed upon the sale of land under the execution issued on a void judgment conveyed no title, and that the deed of the purchaser at sheriff's sale to another party could convey no more title than he himself had. The counsel for the defendants in error have referred us to the case of Harvey v. Tyler, 2 Wall. 328, in which Judge Miller, speaking for the court, said: "There is one principle underlying all the various classes of cases, which may be relied on to carry us through them all when we can be sure of its application. It is that, whenever it appears that a court possessing judicial powers has rightfully obtained jurisdiction of a cause, all its subsequent proceedings are valid, however erroneous they may be, until they are reversed on error or set aside by some direct proceeding for that purpose." Certainly the proposition is undeniable that, where jurisdiction is rightfully obtained, the judgment will have precisely the effect ascribed to it in the paragraph above quoted. But the obtaining or acquiring jurisdiction is the question.

The law in regard to void and voidable judgments has been examined and laid down by the Supreme Court of the United States in a series of well-considered decisions. (Vorhees v. Bank of U. S., 10 Pet. 474; Elliott v. Piersol, 1 Pet. 340; Hickey v. Stewart, 3 How. 750; Shriver v. Lynn, 2 How. 43.) In Vorhees v. Bank of U. S., Mr. Justice Baldwin said: "If not warranted by the constitution or law of the land, our most solemn proceedings can confer no right which is denied to any judicial act under color of law which can properly be deemed to have been done *coram non judice*—that is, by persons assuming the judicial

function in the given case without lawful authority." So, in Shriver v. Linn, *supra*, it is declared that a sale ordered by a court in a case where it had not jurisdiction must be considered as inadvertently done, or as an unauthorized proceeding, and in either branch of the alternative as a nullity. The rule appears quite plain, but the great difficulty is in its application. The case of Gilman v. Hovey, 26 Mo. 280, furnishes an apt illustration. There a judgment had been confessed, upon a statement filed with the clerk in vacation, under a special statute, which was clearly defective and insufficient in law; and the judgment was held to be erroneous merely, but not absolutely void. There was jurisdiction over the subject matter and the party, and there was power to render such a judgment in such a case, properly stated; but if there had been no lawful authority to give such judgment in any such case, however correctly stated, I suppose it would have been a nullity. For further illustrations see Janncy v. Spedden, 38 Mo. 395; Shaw v. Gregoire, 41 Mo. 407; and Simonson v. Blake, 20 How. Pr. 484.

The case at bar, then, must be decided by the application of the principle above laid down. What do we find by an examination of the record? Why, that in the suit of Mason v. Barnard and Fithian, in the body of the petition, which stated a statutory cause of action at law, there were inserted and blended certain irrelevant and immaterial averments, which were alone not merely a defective statement of the case, whether at law or in equity, but would not have constituted, however completely stated, any cause of action or ground for the relief prayed for over which the court could have lawfully taken jurisdiction. Now, as before stated in this opinion, jurisdiction of the cause is the power over the subject matter given by the laws of the sovereignty in which the tribunal exists. It is plain that the government of this State conferred no jurisdiction on the Circuit Court, either as a court of law or a court of equity, to render a personal judgment over against Mrs. Fithian, who was not a mortgagor. It must be considered as an inadvertent assumption of judicial power not granted by law. It is true it was a court of general jurisdiction as to matters of both law and equity, and it had a special juris-

diction at law under the statue. But it is equally true that no authority had been conferred upon the court in either capacity, by the constitution and laws of this State, to take cognizance of such a cause and grant such relief. Although the statute may make changes in the forms of pleadings, such changes do not necessarily affect the substance. The principles of law and equity and the powers of jurisdiction remain the same. I am of the opinion that the judgment, so far as it affected the vendee, Mrs. Fithian, personally, or her separate estate not included in the mortgage, was not merely erroneous or voidable and reversible on error, but that it was an absolute nullity, and that no title passed by a sale of her estate under the same.

It results, therefore, that the judgment of the court below must be reversed and the cause remanded. The other judges concur.