BETSEY STILPHEN, libelant, *vs.* FRANCIS STILPHEN.

*Divorce—power of court to grant. Pleading. Practice—when pleadings
end in demurrer. Puis darrein continuance—form of.*

The fact that the husband has already obtained a divorce *a vinculo*, is no bar to
the granting of a like divorce to the wife, when, in the exercise of a sound
discretion, it is deemed reasonable and proper.
When the pleadings end in a demurrer, the court must decide against the party
who committed the first error.
If a libelee would take advantage of the fact that during the pendency of the
libel against him, he had obtained a divorce from the libelant, it must be done
by a plea of *puis darrein continuance.*
Such a plea must not be pleaded in bar generally, but to the further maintenance
of the suit.

ON EXCEPTIONS.

LIBEL FOR A DIVORCE *a vinculo.*

The libel was dated Sept. 22, 1864, and entered at the October
term following. At the following January term personal notice
was ordered upon the libelant, and on Feb. 25, 1865, complied
with.

At the October term, 1867, the libelee filed a motion to dismiss upon the ground that the bonds of matrimony between him and the libelant had been dissolved upon his libel; but the presiding judge overruled the motion.

The libelee, by leave of court, then pleaded,

That the libelant ought not to have and maintain her said libel for a divorce, and to be granted alimony and allowance as aforesaid against him, because, he says, that at the term of our supreme judicial court, begun and holden at Wiscasset, within and for the county of Lincoln, on the second Tuesday of May, A. D. 1865, being the ninth day of said month, the said Francis Stilphen impleaded the said Betsey Stilphen, in a petition and libel for divorce from the bonds of matrimony, in his own favor and against the said Betsey; which libel was sued out of said court and served upon the said Betsey, on the 26th day of December, A. D. 1864; which bonds of matrimony are and were the same identical bonds, in the said Betsey Stilphen's libel, above mentioned; and thereupon such proceedings were had that afterwards, to wit, at the same term of said court, as is above set forth, the said Francis Stilphen, by the consideration of the same court, was divorced from the said Betsey; and it was by said court, then and there considered and decreed, that the bonds of matrimony theretofore entered into and existing by and between the said Francis Stilphen and Betsey Stilphen, for the causes set forth by the said Francis in his said libel, be and the same were thereby dissolved, as by the record and proceedings thereof now remaining in said court more fully appears; which judgment and decree still remains in full force and unreversed; and this he is ready to verify. Wherefore, the said Francis Stilphen prays judgment if the libelant ought to have and maintain her libel aforesaid against him, and to be granted alimony as aforesaid.

To which the libelant replied,

That by anything by the said Francis in his plea aforesaid pleaded, she ought not to be barred from having and maintaining her said libel for divorce to be granted to her, and for alimony and

allowance as aforesaid, because she says that prior to the making and suing out of his said libel, on which the said decree of divorce was by him obtained, to wit, on the 22d day of September, 1864, the said Betsey sued out her said libel against the said Francis, made returnable to the October term then next of this court, which was entered at said October term, and continued to the January term then next, and that the said. Francis agreed with her attorney, in consideration that he would not have service made, that he would waive notice and would have his appearance entered in court.

Whereupon and for that cause, relying on said agreement, she did not have her said libel served. But said Francis, wrongfully disregarding his said promise, neglected and refused to have his appearance entered or to waive notice, but with covinous and unjust purpose and design of intercepting and defeating her just claim to a divorce with alimony, as prayed for in her said libel, on Dec. 22, 1864, sued out his said libel and caused immediate notice and service thereon; and said Betsey, by her attorney, at said January term, obtained an order of notice on her said prior libel, which was made returnable to the May term following, and was duly served. And at the said May term, the said Francis, in her absence, and in the absence of her counsel, and when she did not expect a trial on his said libel, caused her to be defaulted, and at an *ex parte* hearing before the court, testified to her desertion and going away from his house in September or October, 1863, as stated in his said libel, but wrongfully and fraudulently withheld and kept back from the court the fact he well knew and ought to have stated, that his gross unkindness and cruelty to her compelled her, when in very feeble health and unable to bear his cruel treatment, to go to her friends for succor and protection, and that her going away at that time was not wrongful and willful desertion, as he well knew. And she avers, that that proceeding and testimony was had upon the hearing of the same libel, and at the time of the making the same decree in respondent's plea mentioned. And this she is ready to verify. Wherefore she prays judgment and a decree of divorce to her, and alimony, as prayed for in her libel.

To this replication the libelee demurred, and the libelant joined the demurrer.

The presiding judge, *pro forma*, overruled the demurrer; and thereupon the libelee, having leave to plead double, filed a plea of not guilty, and offered in bar to the further prosecution of the libel and of the prayer for alimony and allowance a copy of a libel, *Francis Stilphen* v. *Betsey Stilphen,* which was filed Dec. 24, 1864, served Dec. 26, 1864, entered at the January term, 1865, when it was decreed, " that the bonds of matrimony, heretofore entered into by and between the said Francis Stilphen and Betsey Stilphen, for the causes set forth by the said Francis in his said libel, be and the same are hereby dissolved, and that the custody of the said two minor children be with the father." The presiding judge ruled, *pro forma*, that it constituted no bar to the present libel, and, after hearing the case, entered a decree of divorce ; and instead of alimony, allowed the libelant certain articles of personal property, and the specific sum of five hundred dollars. Whereupon the libelee alleged exceptions.

*A. P. Gould,* in support of the exceptions.

The prayer of the libel is, " that the bonds of matrimony may be dissolved between " the libelant and the libelee, " and a divorce decreed." The libelee replies, that no bonds of matrimony exist, and proves it by a decree (founded upon a libel and due proceedings had thereon), " that the bonds of matrimony heretofore entered into by and between " the parties here, " be and the same are hereby dissolved."

The court cannot dissolve a second time a contract which it has once, by a solemn decree, dissolved and annulled.

Marriage is a civil contract which the court has the chancery power of dissolving on the petition of either party for the alleged breach of it by the other, and for other causes which concern society.

A divorce *a vinculo* annuls the marriage altogether, and restores the parties to all the rights of unmarried persons, and relieves them

from all the liabilities which grew out of the marriage, except as may be provided by statute or made a part of the decree. 1 Pars. on Cont., 566.

The statute did not, in 1865, impose any limitations upon the effect of the decree; but all former laws upon the subject were repealed by R. S. of 1857.

No limitation is found in R. S., 1857, c. 60, § 2; and to make sure that no limitation should exist, Public Laws of 1858, c. 45, provided, that "whenever a divorce from the bonds of matrimony has been decreed, either party may lawfully marry again; and all acts and parts of acts inconsistent with that were thereby repealed."

The same result was reached by the court before the passage of this last act. *State* v. *Weatherby*, 43 Maine, 258.

Parties may have purchased and paid full value of real estate of the libelee since his divorce for the fault of his wife, thus learning that she was not divorced for his fault, and hence that she could not recover dower under R. S., c. 60, § 6. A decree of divorce from the bond of matrimony, although obtained by fraud and false testimony, cannot be set aside on an original libel, filed at a subsequent term. *Greene* v. *Greene*, 2 Gray, 361.

On this libel no decree respecting alimony or allowance could be made.

The decree of divorce is the foundation of all decrees in a libel for divorce.

The only power the court has in respect to the property of either party, is given in §§ 6, 7. Such decrees can only be made in favor of the party to whom the divorce is decreed.

A decree respecting the children may be modified, § 19; but the decree of divorce and that concerning property remain unchanged except on petition for new trial, which this libelant has unsuccessfully tried.

The libelee's libel was first served. No special plea was necessary under which to admit the facts.

If special plea was necessary, judgment should have been for the respondent.

The libelant did not deny the plea nor demur, but replied, setting up matters in avoidance. The judgment is valid until reversed.

The facts set forth in the replication were not evidence for her on the trial of the merits, and no answer therefore to the judgment when it was put in evidence. 1 Chit. Pl., 662.

*Puis darrein continuance* is proper only where matter of defense has arisen since issue in fact has been joined. 1 Chit. Pl., 657–8.

The plea is substantially to the further maintenance of the suit, " that she ought not to have and maintain her suit."

The omission of the word "further" is not fatal, especially as the libelant did not demur, but replied. If defective, it was cured by libelant's election to treat it as valid and reply new matter. 1 Chit. Pl., 671 *et seq.*

The respondent demurred to the libelant's new matter and not to the whole case.

The court will not go back to the first plea, except where there is a defect in substance. *Calais* v. *Bradford*, 51 Maine, 414, 416. See also, *State* v. *Sweetsir*, 53 Maine, 438.

The ruling excepted to was upon the effect and not admissibility of the evidence.

No fraud was proved or attempted to be, except so far as it comes from the pleading.

*J. Baker & J. Ruggles*, for the libelant.

WALTON, J. In this case the wife petitioned for a divorce. While her libel was pending, the husband also petitioned for a divorce, and both suits were pending in the same court at the same time. The wife employed counsel from another county, not only to prosecute her own libel, but to defend against her husband's; but in the absence of her counsel, and in her absence, and at a time when, as she says, she did not expect the actions to be called for trial, the husband had his wife called and defaulted on his libel; and then, at an *ex parte* hearing, and as his wife avers and the pleadings confess, by his own false testimony, obtained a decree in his favor. The wife at once petitioned for a review, but the husband

soon after married another woman, and thus deprived the court of the power to grant it; for when either of the parties has married again, the court has no power to grant a review in a divorce suit. Thus foiled in her efforts for a review, the wife claimed the right to go on with her libel, which was first filed, and offered to prove not only the truth of the charges she had made against her husband, but also the falsity of the charges he had made against her, and the falsity of his testimony in support of them; and upon the question of alimony, or an allowance, that the property which she and her husband had accumulated during the twenty years or more that they had lived together, had been acquired mainly by her labor and good management in keeping a boarding-house; and that she had been cast off by her husband in such a feeble state of health, and so destitute of the necessaries of life, that she had been obliged to become a public charge. To this the husband interposed no other defense than the fact that he had already obtained a divorce, which he claimed was a complete bar to the further prosecution of his wife's libel. To this plea the wife replied, that he obtained his divorce in her absence by fraud and false swearing. To this the husband demurred. The court is thus called upon to decide whether the fact that the husband has already obtained a divorce, deprives the court of the power to grant a like divorce to the wife, and thus lay the foundation for an ancillary decree, securing to her such portions of the common property as justice and humanity may dictate.

We cannot doubt that this court is vested with such a power. It was at one time conferred in express terms. The Revised Statutes of 1841, c. 89, § 2, contained an enumeration of eight causes for which a divorce might be granted. The seventh was, that when one party had been divorced, the court might grant a like divorce to the other upon such terms and conditions as in the exercise of a sound discretion should be judged reasonable. This entire section was afterwards repealed,—not, however, for the purpose of depriving the court of the power to grant a divorce in any of the cases therein named, but because a new statute had in the mean time

been enacted, conferring upon the court such enlarged powers, in matters of divorce, that the former enumeration of causes was not only useless, but imperfect and deceptive. The very act which repealed the former enumeration, reaffirmed the power of the court to grant a divorce in any case and for any cause (except where both parties had been guilty of adultery, or were guilty of collusion), if the same should be deemed reasonable and proper, etc. Act of 1850, c. 171.

But, it is said, that when one party has been divorced, the other may lawfully marry again; therefore, there is no necessity for a second divorce. If the sole object of a divorce suit was to enable one or both of the parties to marry again, this argument would be entitled to great weight. But this is not the case. The ultimate object is, in many cases, to enable the court to decree concerning the care and custody of the children, and make provision for their support and education, and to secure to the wife such portions of the common estate as justice and humanity may dictate. The decree for a divorce may in such cases be regarded as a mere matter of form, necessary only to enable the court to make the ancillary decree ; for in terms the law does not authorize the court to make the latter without first making the former. The assumption, therefore, that a second divorce can never be necessary because the first will enable the parties to marry again, is not correct. It is true that it is no longer necessary to enable the wife to marry again, but it is still necessary to enable the court to make a decree, securing to her such portions of the common property as may be deemed reasonable and proper.

In a case which occurred in New Hampshire, the supreme court of that State say that " the wife may be in the wrong; she may have an unhappy disposition ; she may have ill-treated her husband, or deserted him, or have otherwise misconducted herself; and yet the property she may ask for may be only such as was hers before the marriage, or such as has been accumulated in whole or in part by her own industry ; and her fault may be far from such as ought to be punished by the forfeiture of all her property, thus leaving

her to beg or starve. She may have so conducted that her husband may be well entitled to a divorce, and yet she may be a wronged and injured woman; and there seems, therefore, to be good reason why the court should be vested with the power of making to her a just and reasonable allowance in any such case." *Sheafe* v. *Sheafe*, 24 N. H. 564; *Sheafe* v. *Leighton*, 36 N. H. 240.

In the case above cited, the husband had obtained a divorce for the alleged adultery of his wife; and yet the court, on the wife's petition praying for alimony, permitted her to introduce evidence to show that her counsel had misapprehended the weight and sufficiency of the libelant's testimony, and had neglected to furnish evidence in defense of the charges set up in the libel, because he believed that a divorce could not be decreed upon the evidence produced by the libelant; and also to show gross impropriety of conduct on the part of the libelant toward the libelee, in endeavoring to ensnare her and procure causes of divorce; and also to show that she might be innocent of the charges preferred against her, while her husband himself might, perhaps, be guilty of the crime of adultery; and the court, upon mature consideration, held that the course pursued was proper, for the reasons given in the extract from the opinion of the court already quoted.

There is no class of cases in which the court is so liable to be imposed upon, and a decision obtained contrary to the truth, as *ex. parte* divorce suits. The notice is often imperfect, so that the confession of guilt implied in the default is deceptive. And it is well known that witnesses, testifying in the presence of one of the parties, and in the absence of the other, will so alter and magnify the faults of the absent, and suppress everything that makes against the party present, that it is impossible to tell where the truth and real merits of the controversy are. When both parties are present, each is sure to put the other in the wrong; and *a fortiori* is this true, when one of the parties is permitted to testify in the absence of the other, as is now the case in divorce suits. We repeat, therefore, that there is no class of cases in which the court is so liable to be imposed upon; and it seems to us of the utmost importance that

the court should be possessed of the power in some form to revise their decisions in this class of cases; otherwise, the grossest injustice is liable to be done.

That the court once possessed the power, when one party had been divorced, to grant a like divorce to the other upon such terms and conditions as in the exercise of a sound discretion should be deemed reasonable and proper is clear, for it was conferred in express terms; and we think it is equally clear that the court has never been deprived of this power. The object of the second divorce is not to enable the delinquent party to marry again, but to enable the court to make such ancillary decrees as justice and humanity may require.

The fact must not be overlooked that a second divorce in no way impugns the first. In declaring the bonds of matrimony dissolved, the second decree is in harmony with and confirms the first. As before remarked, the second decree is important only as enabling the court to make such ancillary decrees concerning the property as justice may seem to require.

And in this case, it must be remembered, that the wife's libel was first filed, and that the defendant's demurrer to the wife's replication admits (at least for the purposes of this case), that the husband's divorce was obtained in her absence, and in the absence of her counsel, by his own false and fraudulent testimony.

And it may also be added, that the husband's plea in bar that the bonds of matrimony between him and his said wife had already been dissolved, was not pleaded in proper form; and that his demurrer to the wife's replication requires the court to decide against him, upon the well-settled rule of pleading, that when the pleadings end in a demurrer, the court must decide against the party who committed the first error. *Calais* v. *Bradford*, 51 Maine, 414; *Shelden* v. *Call*, 55 Maine, 159. The ground of defense set up in the defendant's plea in bar was a matter that occurred while the wife's suit was pending, and could, therefore, be taken advantage of only by plea *puis darrein continuance;* and by the well-settled rules of pleading, such a plea must not be pleaded in bar gen-

erally, as was done in this case, but to the further maintenance of the suit. *Rowell* v. *Hayden*, 40 Maine, 582, and cases there cited. The defendant's plea was, therefore, clearly bad in form, and would authorize the court to decide the case against him upon that point alone. But in a case of this importance the court felt reluctant to base their decision on a mere matter of form in the pleadings, and have, therefore, carefully considered the case on its merits.

Our conclusion is, that the mere fact that the husband has already obtained a divorce, is no bar to the court's granting a like divorce to the wife, the object being to enable the court to make an ancillary decree, securing to the wife such portions of the property as in the exercise of a sound discretion may be deemed reasonable and proper. Whether or not this power should be exercised in a given case, is for the judge to determine at *nisi prius*, upon the evidence then before him.                *Exceptions overruled.*

APPLETON, C. J.; CUTTING, KENT, BARROWS, DANFORTH, and TAPLEY, JJ., concurred.