MARIA DeGRAW, Plaintiff in Error, *v.* HAMILTON DE-GRAW, Defendant in Error.

### April 22, 1879.

1. A petition to which a demurrer, if interposed, would be sustained on the ground that no cause of action is sufficiently stated, may yet confer jurisdiction.
2. In an action for divorce, if the court has jurisdiction of the subject-matter and the parties, its judgment, if erroneous, is not void, and is binding until reversed.
3. For fraud in obtaining jurisdiction, relief can be obtained only in the court

. possessed of the original record, and by proceedings instituted for that purpose.

4. A judgment for divorce granted the husband is a bar to an action for divorce by the wife.

5. Alimony cannot be granted except as an incident to divorce.

Error to St. Louis Circuit Court.

*Affirmed.*

Jeff. Chandler, for plaintiff in error : The decree upon which the defendant rests his case is void. — 2 Whart. on Ev., sect. 796 ; *Bowden* v. *Fitch*, 15 Johns. 121 ; *Bowers* v. *Bowers*, 19 Mo. 351 ; 58 Mo. 141 ; 47 Miss. 170 ; 39 Cal. 646 ; 42 Miss. 506 ; 41 Miss. 89 ; *Cole* v. *Cole*, 3 Mo. App. 571. Upon jurisdictional questions the record may be contradicted. — *Egler* v. *Stone*, 59 Mo. 89. The record must show that the court inquired into the matter. — *Wetzel* v. *Waters*, 18 Mo. 396 ; *Robinson* v. *Lawson*, 26 Mo. 69. A judgment by confession against a married woman is void. — *Higgins* v. *Peltzer*, 49 Mo. 152 ; *Moses* v. *Goppen*, 3 Gray, 411 ; *Watkins* v. *Abrahams*, 24 N. Y. 72. The principle that a party cannot impeach a judgment in a collateral proceeding does not apply here. — 49 Mo. 157 ; 18 N. J. 87. A judgment obtained by fraud cannot be pleaded in bar. — 15 Johns. 144 ; *Ward* v. *Gunbeson*, 57 Mo. 425 ; *Spalding* v. *Conway*, 51 Mo. 51. This action can be maintained as the foundation for alimony. — 58 Me. 513 ; *Doyle* v. *Doyle*, 26 Mo. 549.

H. Lander, for defendant in error : The question is only one of jurisdiction. If the Linn court had jurisdiction of the subject-matter, of the parties, and of the cause, then the Linn decree cannot be *void*, and therefore cannot be questioned collaterally. — 2 Bishop's Mar. & Div., sect. 753 *e* ; *Nichols* v. *Nichols*, 25 N. J. Eq. 60 ; *Gilman* v. *Hovey*, 26 Mo. 280 ; *Wright* v. *Marsh*, 2 Greene (Iowa), 111. The original petition filed in the Linn court, when filed, and when defendant therein was brought into court, was clearly good, and sufficient to give that court jurisdiction of

the whole matter. It was then a statement that would have stood the test of a demurrer even. The jurisdiction having attached, whatever was afterwards done in the progress of the cause was the exercise of judicial power, and at most could be but error. None but an appellate power can look behind the decree. — *Morrow* v. *Weed*, 4 Iowa, 89, and the authorities above cited. That court had the right to pass upon every question which occurred in the Linn cause ; and that decree, until reversed, is binding upon every other court. — *Thompson* v. *Tolmie*, 2 Pet. 157, 168, 169 ; *Voorhees* v. *Bank*, 10 Pet. 473 ; *Grignon's Lessee* v. *Astor*, 2 How. 319. Proceedings that are amendable are not void. — *Durham* v. *Heaton*, 28 Ill. 264 ; *Parmelee* v. *Hitchcock*, 12 Wend. 96 ; *Hardin* v. *Lee*, 51 Mo. 241 ; *Cooper* v. *Reynolds*, 10 Wall. 308 ; *Stewart* v. *Severance*, 43 Mo. 331. If defective, it was simply a defective statement of what, if properly stated, would make a case. — *Fithian* v. *Monks*, 43 Mo. 515 ; *Morrow* v. *Weed*, 4 Iowa, 77, 89. A divorce decree obtained by fraud can only be impeached by a direct proceeding in the original cause, and in the same court. — 2 Bishop's Mar. & Div. (5th ed.), sects. 753 *c*, 753 *d*, 753 *e*, 753 *b* ; Herman on Estop., sects. 146, 197, 198 ; *Kimball* v. *Newport*, 47 Vt. 42 ; *Amory* v. *Amory*, 12 Am. L. Reg. (N. S.) 38, 45, 46. A divorce obtained by fraud cannot be set aside on an original bill for divorce. — *Greene* v. *Greene*, 2 Gray, 361 ; *Parish* v. *Parish*, 9 Ohio St. 534 ; *Allen* v. *Maclellan*, 12 Pa. St. 328 ; *Lucas* v. *Lucas*, 3 Gray, 136. A divorce acquiesced in for several years, and one of the parties marries, will not be disturbed. — *Singer* v. *Singer*, 41 Barb. 139 ; *Succession* v. *Weigel*, 18 La. An. 49 ; *Bolton* v. *Brewster*, 32 Barb. 389 ; *Bourne* v. *Simpson*, 9 B. Mon. 454 ; *Gaines* v. *Gaines*, 9 B. Mon. 295. Since the Practice Act of 1849, it is unnecessary to set out the findings on which the decree is based. — *Jones* v. *Booye*, 47 Mo. 547 ; *Ewing* v. *Brady*, 48 Mo. 560 ; *Kurlbaum* v. *Roepke*, 27 Mo. 161 ; *Martin* v. *Martin*, 27 Mo. 227, 228 ;

*Schmidt* v. *Schmidt*, 26 Mo. 235. And even under the old practice, such omission was but error. — *Finney* v. *The State*, 9 Mo. 627, 628. Alimony can only be decreed as an incident to a judgment of divorce. — *Doyle* v. *Doyle*, 26 Mo. 545 ; 2 Bishop's Mar. & Div. (5th ed.), sect. 356.

BAKEWELL, J., delivered the opinion of the court.

This is an action for divorce. The petition was filed on November 16, 1877, and states that the parties were married in 1840. Amongst other things, it is alleged that the defendant is worth $200,000. There is a prayer for alimony. The answer admits the marriage, and denies all other allegations. It also sets up as matter of defence a former divorce. The original petition and decree are set out in full. The petition was filed on April 2, 1866, by the defendant in the present action, in the Circuit Court of Linn County, Missouri. It alleges various sufficient grounds of divorce, and appears to comply with the statute. The decree is dated August 6, 1867. It recites that the parties appeared on that day, Maria DeGraw appearing by attorney, withdrawing her answer and cross-bill, and saying nothing. The decree proceeds : " And this cause coming on for final hearing and judgment, it appearing to the satisfaction of the court that the defendant had been duly served with process in all respects according to law, having been personally served with a copy of the original writ and petition by the sheriff of Linn County, Missouri, and the court being fully advised of the whole matter, it is therefore considered that the plaintiff herein is a much injured person ; that the bonds of matrimony between the plaintiff and defendant ought to be forever dissolved.

" Wherefore it is ordered, adjudged, and decreed by the court, that the bonds of matrimony existing between plaintiff and defendant be, and they are hereby, declared forever dissolved.

" That the defendant be, and she is hereby, allowed to

assume her maiden name, and that she be allowed to marry again. And it is further ordered and adjudged by the court, that the defendant have and recover of plaintiff all her costs in this suit laid out and expended, and that she have execution therefor.''

The answer says that this decree remains unreversed; that said Maria, at the time of making said decree, and ever since, has been fully advised of the same, and has up to the time of this suit. fully acquiesced in the same; that she has used the privileges of said decree by assuming her maiden name of Maria E. King, and by that name made herself known and transacted all her business; that defendant herein, in good faith, believing himself duly divorced, on the 22d of June, 1868, married again, and is raising a family of children by the second marriage; that defendant, ever since the former divorce, has continued to reside in Linn County, Missouri, with his last wife and family, and transacted all his business there, with plaintiff's full knowledge.

The plaintiff replies that, after the petition in divorce set out in the answer was filed by the defendant, and before the decree of divorce was entered, the defendant here, the plaintiff in that case, caused the allegations of adultery to be stricken out of his petition; that all the allegations in his petition were known to him to be untrue; that he followed her to New York during the pendency of that suit and wrongfully caused her arrest, to prevent her from procuring testimony: that he got possession of the depositions taken for her in the cause and unlawfully suppressed them; that he intimidated her into signing a stipulation to withdraw all opposition to that suit, and, by threats, intimidation, and cruelty compelled her to admit the charges in the petition that remained after the graver accusations were stricken out; that no proof was offered in support of these charges, and that the decree was collusively procured; that the petition, after the matters spoken of were stricken

out, stated no cause of action, and that the decree of divorce is therefore void ; that she was compelled, after the divorce, to live in New York for some years without any aid from the defendant, and to support herself as best she could, and that she was too poor to seek redress. The replication further alleges that since the divorce the defendant has slandered and cruelly treated her.

The defendant demurred to the reply. The demurrer was sustained ; and the plaintiff declining further to plead, the new matter was taken as confessed. The plaintiff, on the trial, offered evidence tending to prove the allegations of the petition and reply. This testimony was excluded, and the court found for the defendant. The plaintiff brings the cause here on appeal.

The well-settled rule is, that, if the plaintiff obtain judgment, and by his own showing have no cause for action, yet if the court has jurisdiction of the cause, it is only an erroneous judgment, and is not void. If the court has no jurisdiction of the cause, it is a void judgment. But there can be no doubt that the filing of a petition such as ought not to be held good on demurrer, may confer jurisdiction. Freem. on Judg., sect. 118 ; McNamara on Nullities, 137. And so it is said : " If the Court of Common Pleas holds pleas in debt, trespass, etc., without an original, it is not void, for they are judges of those pleas, and it cannot be said the proceeding was *coram non judice.*" Co. 77., pt. 10.

The Circuit Court of Linn County had jurisdiction of the subject-matter and of the parties. It had a right, therefore, to decide every question which might arise in the cause ; and whether its decision be correct or not, its judgment, until reversed, is binding on every other court. For fraud in obtaining the jurisdiction, relief can be obtained only in the court possessed of the original record. The court that rendered it may vacate its sentence, when obtained by imposition ; and this may be done even at a subsequent term.

But, to quote the language of Chief Justice Willes, adopted by Chief Justice Gibson in *Allen* v. *Maclellan*, 12 Pa. St. 329, " Who ever knew a defendant plead that a judgment against him was fraudulent? He must apply to the court; and if both parties colluded, it was never known that either of them could vacate the judgment. Here the defendant was a party to the sentence ; and whether she was imposed upon, or she joined in deceiving the court, this is not the time and place for her to redress herself. She may, if she has occasion, appeal ; or *apply to the proper judge.*"

But it is said in *Singer* v. *Singer*, 41 Barb. 139, and the language is cited with approval in the well-considered case of *Nichols* v. *Nichols*, 25 N. J. Eq. 65, " When a judgment of divorce has been acquiesced in for several years, and the plaintiff has again been married, some better reason than the gratification of personal feeling, or the desire to obtain a further sum of money from the plaintiff, should be made clearly to appear, before the court would be warranted in granting such an application. The ground on which such an order should be made would be one of public policy ; but no such reason should suffice where, after acquiescence of both parties to the judgment for three years, an innocent person has been involved by marriage, and the opening of the judgment would involve her in distress and perhaps disgrace. This reason alone would be sufficient to justify me in denying the motion, if there were no other reasons for doing so, and leaving the parties to the consequence of their own acts. "

The Circuit Court could not do otherwise than find for the defendant on the pleadings, and dismiss the bill. The principles which justify its judgment in this case are well settled by authority and long practice, and have never been disputed in Missouri. *Grignon* v. *Astor*, 2 How. 319 ; *Amory* v. *Amory*, 12 Am. L. Reg. (N. s.) 38 ; *Wright* v. *Marsh*, 2 Greene (Iowa), 111 ; *Landes* v. *Perkins*, 12 Mo.

254; *Gilman* v. *Hovey*, 26 Mo. 280; *Hardin* v. *Lee*, 51 Mo. 241; *Fithian* v. *Monks*, 43 Mo. 502.

The judgment of the Circuit Court is affirmed. All the judges concur.

Bakewell, J., delivered the opinion of the court on a motion for a rehearing.

Counsel for the plaintiff in error moves for a rehearing, and, amongst other grounds, alleges that the principle upon which the cause has been decided is that a judgment can be attacked for fraud only in the court in which it was rendered; that this principle has been abolished by the Code of Practice, which permits legal or equitable defences to be set up against a judgment, whether foreign or domestic, wherever and whenever such judgment is sought to be enforced, either as the basis of an original action, or when such judgment is pleaded in bar to an action. Counsel also complains that we have overlooked controlling decisions to that effect, of our own Supreme Court, cited in his brief.

The general equity doctrine is, that equity never attempts to act upon the court of law itself, and claims no supervising power over the proceedings therein. It acts solely upon the party. It never declares the judgment of a court of law void, but merely enjoins the parties from proceeding to enforce it. 2 Story's Eq. Jur., sect. 1571. However, it is now held in Missouri, as well as in other States, that a judgment may be attacked and vacated for fraud, in a direct proceeding between the parties. *Mayberry* v. *McClurg*, 51 Mo. 256; *Acock* v. *Acock*, 57 Mo. 154; 38 Mo. 432. It has been said again and again in this State, both before and since the adoption of the Code of Practice, that in the case of a domestic judgment, where there is no necessity of seeking a foreign tribunal, this can only be done in a direct proceeding. "When the court has jurisdiction, however erroneous or irregular its proceedings may be, they are re-

garded as valid and binding until they have been reversed or annulled by suitable proceedings instituted for that purpose." Such is the language of Judge Scott in *Jones* v. *Talbot*, 9 Mo. 123 ; and in *McNair* v. *Biddle*, 8 Mo. 266 ; adopted by Judge Wagner in *Fithian* v. *Monks*, 43 Mo. 521. "A judgment against a party brought within the jurisdiction of the court is valid until reversed or annulled on proceedings instituted for that purpose, and cannot be impeached collaterally " says Judge Wagner in *Martin* v. *McLean*, 49 Mo. 361. "They are impeachable only in direct proceedings instituted for the purpose," says Judge Sherwood in *Hardin* v. *Lee*, 51 Mo. 245. And to the same effect speaks Judge Adams in *Carson* v. *Sheldon*, 51 Mo. 436. "Where a judgment has been obtained by fraud," says the well-known author of a treatise on Estoppel (Herman on Estop., sect. 140), " the only remedy open to the injured party is by bill in equity, or an application to the court by which it was rendered." "The judgment of a court of competent jurisdiction cannot be impeached collaterally in another court, in an action between the same parties, and upon a point once put in issue and decided. The party must apply to the court which pronounced the judgment to have it vacated." *Callahan* v. *Griswold*, 9 Mo. 784, per Napton, J.

So far as we are aware, it has never been expressly held in this State that, where jurisdiction is obtained, a domestic judgment may be attacked otherwise than by a direct proceeding in the court in which it was rendered. In *Marx* v. *Fore*, it was held by a divided court that a defence of want of jurisdiction and a fraudulent simulated appearance may be set up where the attempt is to enforce a foreign judgment. There, Judge Bliss, who delivered the opinion of the court, says : " I say nothing of other fraud, except that which would go to the jurisdiction. If that was obtained, the party may be required to attack the judgment where rendered. We will not compel a party to go to the *situs* of

the foreign judgment to allege and show that the judgment was obtained by such fraud as went to the jurisdiction of the court." Subsequently it was held, in *Ward* v. *Quinlivan*, 57 Mo. 426, that where sued here upon foreign judgments, our citizens may set up the equitable defence of fraud as a complete bar, and this on the ground that our Practice Act allows equitable as well as legal defences to actions at law, and that our citizens ought not to be driven to foreign courts to seek remedies against judgments procured by fraud. It is admitted that the rule is otherwise in other tribunals; and *Christmas* v. *Russell*, 5 Wall. 290, is cited, in which it is held, as it was once universally held, that the plea of fraud in obtaining a judgment is bad in an action on the judgment. Judge Adams further says : " It is clear to my mind that in equity, judgments, whether foreign or domestic, may be declared void for fraud, in actions brought to enforce them in this State." So far as the statement applies to domestic judgments, this is mere *dictum* of the learned judge, and confessedly his individual opinion only. It is not necessary to the determination of the cause.

Of course, a case cannot arise in which an action shall actually be brought upon a domestic judgment. And where a domestic judgment is set up in answer, as in the case before us, and the reply is that the judgment is void for fraud, if this be allowed, it must be on grounds entirely distinct from those which led to the decision in *Marx* v. *Fore* and *Ward* v. *Quinlivan*. A foreign judgment may be attacked for fraud, when the attempt is made to enforce it, because the citizen should not be sent to a strange forum to assert his rights. At the time of these decisions, it had been settled by authority and long practice that if, on inspection of the record, it was found that the court had jurisdiction of the subject-matter and the parties, the judgment is conclusive ; and that for fraud in obtaining jurisdiction, or any fraud in the concoction of the judgment, relief could

be obtained only in the court possessed of the original record. It was the practice to allow him to obtain this relief in the forum of the judgment attacked ; and upon certificate that the judgment was vacated there, the plea of *nul tiel record* became available. See remarks of Judge Miller, and cases cited, in *Amory* v. *Amory* (U. S. Cir. Ct. East. Dist. Wis.), 12 Am. L. Reg. 38. And the Missouri cases go no further than this : that the plea of fraud may be made in a direct action between the parties to enforce in Missouri a foreign judgment.

It must further be remarked that the judgments that have been attacked in Missouri were money judgments, or judgments concerning exclusively the property rights of the parties, and not their *status*. Marriage is a thing of *status;* and on the theory, which is undisputably the correct theory, that the decree of a court of equity operates upon the parties, and not upon the judgment itself, it is denied that this power of a court of equity can extend to a decree of divorce rendered by another tribunal. How is a court of chancery to act upon the parties without annulling the judgment? If judgments cannot be directly attacked and annulled for fraud by virtue of any superintending power of courts of equity, — and undoubtedly the rule in equity is that this cannot be done, — what relief can be given which warrants the setting up such facts as are pleaded in the replication in the present case? Will equity enjoin a man who is divorced by valid decree from setting up that his *status* is that of an unmarried man? or from saying that a woman from whom he is legally divorced is not his wife?

It has been doubted by learned judges whether, under any circumstances, there should be any interference with the parties after the courts have granted a divorce. Scott, J., in *Smith* v. *Smith*, 20 Mo. 166. And the jurisdiction has been denied, from grounds of public policy, in cases of the grossest and most cruel fraud. *Parish* v. *Parish*, 9 Ohio St. 534 ; *Greene* v. *Greene,* 2 Gray, 361. Breaking up of

a second marriage, as Judge Scott suggests, is only a multi-plication of the misfortunes of innocent women and children. It is revenge, but not reparation. But if an application to set aside a divorce be entertained, it is generally held that the proceeding must be in the court in which the fraudulent decree was rendered. And even there the application is not by original, but by petition in the same cause ; for it is denied that any other court can vacate a fraudulent judgment in divorce, or that the same court can do so in a new and independent suit. Bishop's Mar. & Div., sect. 753. And it is essential that the defrauded party must, if he would be heard, make application with reasonable promptness after acquiring knowledge of the fraud. *Johnson's Appeal*, 9 Barr, 416.

There can be no question whatever, we think, that the demurrer to the reply was properly sustained, and for the reasons briefly stated in the opinion already filed. If we have now gone into the matter more at length, and discussed the Missouri cases, it is owing to the peculiar nature of the proceeding, and because the position which we assume, though sanctioned by authority, and not, we believe, in disaccord with Missouri decisions, seems to be inconsistent with what has been said by Judge Adams in *Ward* v. *Quinlivan*, cited above. What fell from the lips of the learned judge in that case was, however, evidently meant to apply only to ordinary actions concerning merely proprietary rights. It might be a dangerous doctrine, applied to the pleadings in an action for divorce. If a decree for divorce is to be attacked, this should be done in some proceeding instituted directly for that, and before the tribunal granting the decree, or by way of review in an appellate tribunal, and not by being made one of the issues in another suit.

It is, however, contended that the mere fact that the husband had already obtained a divorce is no bar to the court's granting a like divorce to the wife, the object being to enable the court to make an ancillary decree securing to the wife

such portion of the husband's property as may be deemed reasonable and proper. And we are referred to cases in Maine in which it has been so held. *Stephen* v. *Stephen*, 58 Me. 508. The Maine statute once gave this power in express terms; and the court held that the repeal of the section granting it was not for the purpose of depriving the court of the power that it formerly had in the matter, but that the new statute rather enlarged the power of the court. We do not think that, under our statute, the Circuit Courts can dissolve bonds which no longer exist. The second decree would be a manifest contradiction of the first.

It is claimed that the present petition is good as an application for alimony on the ground of abandonment. The courts, however, cannot grant alimony except as an incident to divorce. *Doyle* v. *Doyle*, 26 Mo. 545. There was a provision in our Divorce Act, as it once existed (Rev. Stats. 1845, p. 438, sect. 9), for making allowance to a wife unlawfully abandoned by her husband. But the section seems to have been omitted in subsequent revisions, and is not to be found in the present act. Nor, if it was, do we see how that would help the plaintiff. The present proceeding is not for an allowance to a wife abandoned by her husband.

A decree of divorce, acquiesced in for years, where the husband has remarried, and is living with the second wife, would in no case be opened on a mere question of alimony. The application for a rehearing is denied. All the judges concur.