## JACOB G. ORTH v. MARIA J. ORTH.

*Husband and wife—Divorce—Dower—Consent decree—Fraud.*

1. Defendant's right of dower is held to attach to her *status* as a divorced woman, conferred by statute as a result of the decree for divorce obtained for her husband's misconduct; and, as long as such decree stands unreversed, she is of right entitled to her dower, and neither courts of equity nor of law have any rightful power to deny it to her.

2. From the whole statement of facts contained in complainant's bill, and all just inferences to be drawn therefrom, complainant is held to not have been misled or defrauded in consenting to the decree of divorce granted to his wife, but to have understood the matter fully, and to have agreed and consented to such decree.

3. The right of a divorced woman to dower, under How. Stat. § 6246, becomes vested as soon as the decree becomes final. *Percival v. Percival*, 56 Mich. 297.

Appeal from Ionia. (Mills, J., presiding.) Argued February 9, 1888. Decided March 2, 1888.

Bill filed to impeach a decree of divorce for fraud, and to

enjoin an ejectment suit for dower, etc. Decree dismissing bill affirmed. The facts are stated in the opinion.

*L. B. Soule;* for complainant.

*Lemuel Clute,* for defendant.

CHAMPLIN, J. This cause comes before us upon a demurrer to the bill of complaint.

The bill set up the marriage of complainant with defendant, in February, 1878, and that they lived and cohabited together as husband and wife until July, 1880, when she abandoned him and deserted her home, and refused to live with him as his wife, and on November 22, 1880, she filed her bill of complaint against him praying for a decree on the ground of extreme cruelty.

That on May 2, 1881, he filed his answer by his solicitors, and replication was made thereto; that proofs were taken, and after it was finished it was apparent that she had failed to make a cause for divorce; that she had failed to make a case of legal cruelty against him; and on belief he avers that her solicitor was well aware of that fact.

That at that time he was a farmer, and owned 100 acres of land, upon which he lived, and that in her bill she prayed that her proper alimony and interest in his real and personal property be decreed to her, as well as a decree of divorce from the bonds of matrimony against him; that she also filed a petition in said suit for temporary alimony and expenses during the pendency of the suit; that he was then and is now entirely ignorant of law and of the rules and practice of court, and trusted his defense in the divorce suit to his solicitors, and everything that pertained thereto; that he believed that she would never live with him again, whether she obtained a divorce from him or not, and from the manner she conducted herself while she did live with him as his wife, and the disposition and character that she developed when

thus living with him, he did not much desire that she should remain his wife; but he was not willing that she should have any of his property by way of alimony, dower, or otherwise, which was the purpose he had in defending the divorce suit.

That if she would have ceased to prosecute the divorce suit against him, and would have returned to his bed and board, and would have conducted herself as a wife should, and would be kind and pleasant, and take a wifely interest in his affairs, and be to him truly a helpmeet, he would not only have been willing, but would have very much desired her to do so; but he had no confidence or hope that she would so conduct herself towards him, or that they would ever be happy and prosperous in living together; and therefore, after much thought and reflection upon the matter, he was willing that she should have a divorce from him if she could obtain it lawfully, without alimony and without any claims upon his property.

He then charges upon information and belief that, sometime after the proofs were all taken in said divorce suit, the solicitors for the respective parties had a conference together in regard to alimony and the final result of the suit, wherein it had been agreed by and between them that, if he would permit the solicitor for complainant in that suit to take a decree of divorce, she would relinquish her claim to alimony set up in her bill of complaint, and all claim whatever to any property of his, either real or personal, and take her decree without costs against him; that when the result of the conference was communicated to him, he agreed to permit her to take her decree of divorce against him without costs as against him, and without alimony, but he did not know, and was not informed by any of said solicitors, that when she had obtained a decree of divorce from him on the ground of extreme cruelty she would be entitled to dower in his real estate the same as though he were dead; and that he understood that if she took her decree of divorce against him with-

out alimony, and without costs, she would have no claim against any of his property, and upon this ground he consented to withdraw from further opposition.

That pursuant to such understanding she, on or about the ninth day of November, 1882, by her solicitor, went before the court, and without opposition on his part took a decree of divorce against him, without costs or alimony, on the ground set forth in her bill of complaint.

He further avers that on or about the twenty-sixth day of January, 1886, the said Maria J. Orth commenced a suit in ejectment against him to recover the undivided one-third of his real estate as her reasonable dower; that he has employed an attorney, and put in an appearance and plea, and the suit is at issue, pending, and undetermined.

He charges that the ejectment suit and claim of dower is a fraud upon him; also that the decree of divorce is a fraud upon him, inasmuch as he understood that when she relinquished her claim for alimony set up in her bill she could have no other claim against his property; that the solicitors to said divorce suit respectively knew that if she obtained a decree of divorce she would be entitled to dower in his real property, and did not inform him of that fact "when they or any of them" asked him to consent to a decree as above stated; that had he known she would be entitled to dower in his lands on obtaining a divorce from him on the ground set up in her bill, he would never have ceased to defend the suit as long as there was an opportunity to do so; and this fact the solicitors for the respective parties to her suit well knew.

That both parties are 43 years of age; and that the third of his real estate is worth $1,100; that he was ignorant that she had any claim against him or his land until the commencement of the ejectment suit.

He prays that Maria J. Orth be restrained from proceeding further in the ejectment suit, and also from instituting any new suit for the recovery of dower; and that the decree

of divorce be declared fraudulent and void, and for general relief.

The bill is filed to impeach a decree for fraud. Unless this can be done, and the decree abrogated, he is not entitled to the relief prayed for in his bill. The defendant's right of dower attaches to her *status* as a divorced woman, conferred by statute as a result of the decree for divorce obtained for her husband's misconduct. So long as her decree stands unreversed, she is of right entitled to her dower, and neither courts of equity nor of law have any rightful power to deny it to her. We cannot, therefore, accede to the request made by complainant's counsel upon the argument that, although we might decline to deny the relief to set aside the decree dissolving the marriage, we might yet retain the bill, and grant a perpetual injunction against defendant's proceeding in the ejectment suit or any other suit or proceeding to obtain dower.

Complainant does not claim that any fraud was perpetrated upon the court which granted the decree. His statements show that the contest was a real one, and was submitted to the court for decision upon pleadings and proofs taken upon both sides in the case. The decree resulting was the solemn adjudication of the court upon the rights of the parties, and must stand, unless impeached for fraud perpetrated by the party obtaining it upon the other party.

The gist of the complaint is that complainant " is and was ignorant of the law,'' and of the rights secured to a married woman who obtains a divorce upon certain grounds involving the misconduct of the husband; and that his solicitor and his wife's solicitor were not thus ignorant, and did not advise him of the law, and of her right to dower if a decree should be granted in her favor.

It was not the duty of her solicitor to advise him as to the law. He does not charge that either her or his solicitors knew of his actual ignorance of the law. He does not charge

any understanding between the solicitors of the respective parties to keep such knowledge or information away from him, or that they did or said anything to induce him to believe that the law gave her no dower right in his real property. He had small opinion of her character, and less love for her as his wife; and he felt no confidence or hope that she would ever conduct herself towards him as he considered a wife should, or that they would ever be prosperous or happy in living together again; and,—

"After much thought and reflection upon the matter, he was willing that she should have a divorce from him if she could obtain it lawfully, without alimony or any claim upon any of his property."

He then states the conference of the solicitors, but he does not state upon whose suggestion it was brought about. Following, as it does, the thought and reflection which he had bestowed upon the matter, it may well be inferred that the conference was the result of his own deliberations upon the subject. He says that, when the result of the conference was communicated to him,—

"He agreed to permit her to take a decree of divorce against him, without costs and without alimony."

He does not say that he agreed to let her take a decree without costs, alimony, or any claim against his property, real or personal. From the whole statement of facts contained in the bill of complaint, and all just inferences to be drawn therefrom, it does not appear that he was misled or defrauded in what was done, but understood the same fully, and agreed and consented thereto. Giving full credence to his charges, upon his own statement of the case, it is fittingly characterized in the language of Chief Justice MARSTON in *Simons v. Simons,* 47 Mich. 253 (10 N. W. Rep. 360) where he says that—

"The whole matter was simply a shameless bargain, and, whether right or wrong, he must now abide by it."

The probability, however, is that the question of dower was not thought of. The right of the divorced woman to dower, under section 6246, How. Stat., had not at that time been passed upon by this Court, and it was not until the case of *Percival v. Percival,* 56 Mich. 297 (22 N. W. Rep. 807), decided at the April term, 1885, that the question was determined that under that section the right of dower became vested as soon as the decree became final.

We think the decree of the circuit court, dismissing the bill of complaint, should be affirmed, with costs of both courts.

SHERWOOD, C. J., CAMPBELL and LONG, JJ., concurred. MORSE, J., did not sit.