Thaona Aveline McDonald, Appellant, *v.* James McDonald, Respondent.

First Department, February 14, 1930.

*Ramsey Clayton* of counsel [*Taylor, Blanc, Capron & Marsh,* attorneys], for the appellant.

*William O. Robertson* of counsel [*Cardozo & Nathan* and *J. J. Lynch,* of Tennessee bar, with him on the brief], for the respondent.

McAvoy, J. The action was brought to recover $5,000 on a promissory note made in January, 1927, by the defendant, who is the husband of the plaintiff.

Plaintiff alleges that the note was given by defendant to her as consideration under a separation agreement. The complaint states that on February 2, 1927, a decree was entered in the District Court of Idaho, Fourth District, in favor of plaintiff and against defendant, granting plaintiff an absolute divorce; that said decree found that the separation agreement was just, equitable and fair, and ordered that it should remain in full force and effect; that no part of the note has been paid, and plaintiff is the holder.

The answer admits the making and execution of the note and separation agreement, the entry of the decree of divorce in Idaho,

but denies the other allegations. It also contains two affirmative defenses: (1) That the plaintiff violated and breached the agreement, and (2) that the separation agreement and note set out in the complaint were executed by the parties in consideration of plaintiff's agreement to procure a divorce, and that said agreement and note are invalid, and that they were founded on an illegal consideration, and that such agreement and note are contrary to public policy of this State. (This is also pleaded as a counterclaim.) Defendant demands judgment dismissing the complaint and adjudging the separation agreement and note to be illegal and of no force and effect, and an injunction preventing the plaintiff from taking any proceedings to enforce the terms of the agreement or to collect the note during the pendency of this action and thereafter.

Plaintiff moved in Special Term to strike out the two affirmative defenses on the ground that they were insufficient in law, and to dismiss the alleged counterclaim on the ground that it does not state facts constituting a cause of action.

This motion was granted as to the first defense, but denied as to the second defense. The question for our ruling is as to the sufficiency of the second defense and the counterclaim. The facts in the counterclaim arise out of the facts set forth in the complaint. The complaint alleges that the note was given in part consideration for a separation agreement. The second defense attacks the validity of the consideration for both the note and the agreement. A counterclaim must tend to diminish or defeat plaintiff's recovery. The defense which is attacked alleges the illegality of consideration to support the note sued on, and, if proven on the trial, plaintiff's cause will be defeated. This constitutes the defendant's plea, as given, a counterclaim. It is an equitable cause of action arising out of the same contract or transaction pleaded as the cause of action in the complaint. It is asserted as an equitable cause, arising out of the same transaction, which may be pleaded as a counterclaim against a cause of action at law brought thereon.

We think that this equitable cause to set aside the agreement and to cancel the note is a good counterclaim against the suit upon the note.

We think, too, that the second defense, that the separation agreement was procured by an illegal consideration, *i. e.*, that it was entered into for the purpose of procuring the divorce, and the plea that such agreement is invalid, a fraud upon the law, against public policy, and cannot be enforced in a law suit, is a good defense and counterclaim against the plaintiff's complaint. A court will annul or restrain the enforcement of a judgment obtained by fraud either between the parties, or upon the court. The rule of merger would

not make the agreement and the note coalesce into the decree of the Idaho court. In order that a judgment should have the effect claimed of merger, it is not enough that the party produce a record showing a judicial determination of the same question litigated in his favor, but it must also appear that it was rendered upon the merits, upon a material point and substantially upon the same facts presented in the subsequent case. While it appears in the Idaho judgment that the action was between the same parties, it does not appear whether the separation agreement was considered from the point of view of defendant's counterclaim. In that proceeding defendant defaulted. The pleadings in that action and the testimony taken on the trial are not part of the record in this case, and it cannot be determined that the doctrine of merger applies and that the agreement has become as though it were a mandate of that court.

In all the cases cited by plaintiff, in which there was a merger declared, the foreign decree directed the payment of a stipulated sum. In this case the decree does not direct the defendant to do anything. It does not indicate that the agreement was merged into it. If the decree had merged the note, the action should be upon the decree, for the doctrine of merger would extinguish the debt.

The question of the validity or invalidity of the separation agreement was never adjudged by the Idaho court. If the courts of Idaho would have power to set aside this judgment as contrary to the public policy of that State, and a fraud upon the court, certainly the facts which would afford affirmative relief there would constitute a defense to the judgment here. If not, the judgment of the court of Idaho would be entitled to greater faith and credit in New York than would be conceded to it in the court of its own State where it was rendered. Such consideration to the judgments of a sister State, says the Supreme Court of Iowa, the Constitution and acts of Congress do not require. (*Dunlap* v. *Cody*, 31 Iowa, 260.)

The rule is that a judgment rendered in our own, or a sister State, or in a foreign country, may be attacked collaterally for want of jurisdiction, or for fraud on the court, or between the parties to the action. (*Schley* v. *Andrews*, 225 N. Y. 110.) However regular the proceeding in the Idaho court was, it was alleged by the defendant that it was founded upon an agreement to obtain a divorce. If defendant succeeds in proving this counterclaim, the court will not enforce the terms of the agreement, not because of favor to this defendant or in his right alone, but because of the policy of the State and its courts.

The order so far as appealed from should be affirmed, with ten dollars costs and disbursements to the respondent.

MERRELL, J., concurs; DOWLING, P. J., and PROSKAUER, J., dissent.

FINCH, J. (concurring). I concur in the affirmance of the order so far as appealed from upon the ground that the plaintiff sues upon the promissory note and not upon the decree. If the suit had been upon the latter, the Constitution of the United States (Art. 4, § 1) would preclude this defense against this judgment duly entered upon personal service in a court of record in the State of Idaho. (*Schley* v. *Andrews*, 225 N. Y. 110; 32 L. R. A. [N. S. 1911], p. 939; 34 C. J. pp. 1153, 1154, § 1633 *et seq.*)

PROSKAUER, J. (dissenting). On January 17, 1927, the plaintiff and defendant, both residents of Idaho, entered into a separation agreement in the city of Washington, D. C. By virtue of one of its terms the defendant gave to the plaintiff a note for $5,000, upon which the plaintiff seeks to recover in this action. The plaintiff instituted an action for divorce in a court of competent jurisdiction in Idaho and the defendant appeared therein. On February 2, 1927, a decree was entered therein granting a divorce to the plaintiff and affirmatively finding that the plaintiff and defendant entered into the agreement of January 17, 1927; that that agreement was " just, equitable and fair in every particular to each of the parties; " and it was decreed that the said agreement of January 17, 1927, " between the parties to this action shall be and remain in full force and effect." The defendant has interposed in this action upon the note a defense and counterclaim, both based upon an allegation that the separation agreement was entered into in consideration of the plaintiff's agreement to procure a divorce and that it was, therefore, against public policy and void. This appeal is from an order denying plaintiff's motion to strike out this defense and counterclaim.

The defense and counterclaim allege that plaintiff " represented to the defendant that unless the defendant entered into the agreement * * * she would not take any proceedings for a divorce from the defendant nor desist from such cruel and inhuman treatment nor permit the defendant to live separate and apart; that thereafter * * * the plaintiff and the defendant entered into the agreement * * * in consideration of the plaintiff * * * agreeing to forthwith proceed to Idaho and there institute an action for absolute divorce against the defendant; " that it was further agreed " that said agreement and said notes should be

executed and delivered in such form as not to disclose the real purpose thereof or to show upon their face real consideration therefor. * * * That said agreement and said notes are invalid, illegal and of no force and effect in that they are unconscionable and were obtained by fraud and violation of the law and public policy of the State of New York."

In so far as the defense seeks to assert the invalidity of the agreement, it is ineffectual. Though it is alleged that the contract is void under the laws of New York, there is no allegation that it was executed in New York; indeed, it affirmatively appears that the agreement was executed outside this State. Nor is there any allegation that the contract was void under the laws of the State of its execution.

Nor does the defense adequately plead that the parties to the contract practiced fraud upon the Idaho court. It merely alleges " that said agreement and said notes [were to] be executed and delivered in such form as not to disclose the real purpose thereof or to show upon their face real consideration therefor." This is not an allegation that the real purpose of the agreement and the real consideration therefor were not disclosed to the Idaho court.

But even if we were to construe this pleading to be an adequate allegation that mutual fraud was practiced upon the Idaho court, we should still be confronted with the question whether the courts of New York will permit collateral attack upon the judgment of an Idaho court decreeing that a separation agreement made between residents of Idaho was just, fair and equitable.

The defendant relies upon *Schley* v. *Andrews* (225 N. Y. 110), and the learned justice at Special Term considered this decision controlling. In that case the plaintiff and defendant were both residents of New York. The wife left her husband and went to Texas and instituted a divorce suit. In Texas, it was alleged, no alimony can be allowed except under special conditions. The wife thereupon abandoned her Texas action, came back to New York and instituted a separation suit against her husband. The parties then entered into an agreement in New York, of which State they were both residents, by which, in consideration of a promise to pay money, the wife was to discontinue the New York separation suit and return to Texas and there procure a divorce against her husband. The husband had given a confession of judgment to secure his promise to pay to the wife and he brought an action in New York to set aside the judgment entered upon this confession and to declare the agreement invalid. The agreement made here between residents of this State was, of course, in direct violation of section 51 of the Domestic Relations Law

and the court so held. It is to be noted, however, that nothing in this authority has to do with the effect of the judgment of a court of a sister State holding that an agreement made between residents of that State was valid.

In *France* v. *France* (79 App. Div. 291) the plaintiff sued to recover past due installments of alimony awarded to her by a decree of divorce obtained in North Dakota. The defendant contended that she could not recover because the award was made pursuant to an agreement subsequently incorporated in the divorce decree and which was predicated upon the understanding that the wife was not to contest the action commenced in Dakota. KELLOGG, J., writes: "But after a divorce has been granted by a court having jurisdiction of the parties to the action, the vicious agreements which led up to the divorce are not available in a collateral attack upon the judgment. They may be used perhaps, in an application to set aside or modify such judgment in the jurisdiction where it is rendered. The parties having submitted themselves to the jurisdiction of the courts of a sister State, having also jurisdiction of the subject-matter, the judgment entered is conclusive there and is equally so in every other State."

Likewise in *Kinnier* v. *Kinnier* (45 N. Y. 535) the parties resided in Massachusetts and agreed to the procurement of a collusive divorce in Illinois. The husband thereafter sought to invalidate this decree by collateral attack in the courts of New York. CHURCH, Ch. J., wrote (p. 542): "It is a rule well settled, that every judgment may be impeached for fraud, and this applies as well to judgments of our own State, as to those of other States or foreign judgments; but what will constitute fraud sufficient to vitiate a judgment, and who can make the objection, and under what circumstances it can be interposed, are material questions.

" The rule is that there must be facts which prove it to be against conscience to execute the judgment, and which the injured party could not make available in a court of law, or which he was prevented from presenting by fraud or accident, unmixed with any fraud or negligence in himself or his agents. * * * This decree was binding upon the parties to it, within this rule. No fraud is alleged by either against the other, and neither could assert that it was not a valid judgment, as they were both equally guilty of the fraud."

Decisions to the effect that fraud may be set up as an equitable defense to an action on a foreign judgment (The American Law Institute: Restatement of the Law of Conflict of Laws, Tentative Draft No. 5, § 481-a) are not decisive where both parties to the litigation have been guilty of fraud. Where collateral attack is

sought for mutual fraud on the court of a sister State, its judgment can be, at most, impeached only if the collusion has some relation to the jurisdiction of the court to render the decree. But even such a distinction has been questioned where personal service existed. In *Andrews* v. *Andrews* (176 Mass. 92; affd., 188 U. S. 14) the wife, defendant in a divorce suit, withdrew her contest to the jurisdiction of the court on the payment of money. HOLMES, C. J., wrote (176 Mass. 92, 94): " But the appellant appeared in the divorce suit and denied the alleged residence of the deceased, although afterwards, upon receiving a certain sum of money, she directed her counsel to withdraw. There is a plain difference between a case in which a respondent has not submitted herself to the power of the court and one in which she has done so. In the former, a foreign State within whose territory she is domiciled may decline to allow her rights to be affected by the decree, whatever the record may allege. In the latter, there is stronger ground for saying that if the libel alleges residence and any other facts necessary to give jurisdiction, the libellee no more can dispute the validity of the decree on the ground that the court was mistaken as to residence than she could upon the ground that it went wrong on the merits."

In the case at bar the collusion alleged did not affect the jurisdiction of the Idaho court, nor did it result in the suppression or perversion of facts upon which jurisdiction rested. It related at most — even if we were to infer facts not alleged — to the suppression of evidence which might have influenced the Idaho court to refuse to approve a settlement in an action for a divorce, where the jurisdiction of the court had unquestioned basis in the joint *bona fide* residence of the parties in Idaho and their appearance before that very tribunal.

The authorities are clear that a party to the mutual fraud or collusion will be denied relief in a collateral attack upon a decree of divorce in so far as the decree operates as a judgment *quasi in rem* dissolving the marital status. (*Hamilton* v. *McNeill*, 150 Iowa, 470; *Mohler* v. *Shank*, 93 id. 273; *Dow* v. *Blake*, 148 Ill. 76; *Friebe* v. *Elder*, 181 Ind. 597; 105 N. E. 151; *Davis* v. *Davis*, 61 Me. 395; *Orth* v. *Orth*, 69 Mich. 158; *Matter of Ellis*, 55 Minn. 401; *DeGraw* v. *DeGraw*, 7 Mo. App. 121; *Nichols* v. *Nichols*, 25 N. J. Eq. 60; *Kirrigan* v. *Kirrigan*, 15 id. 146; *Kinnier* v. *Kinnier*, 45 N. Y. 535; *Miltimore* v. *Miltimore*, 40 Penn. St. 151; *Moor* v. *Moor*, [Tex. Civ. App.] 63 S. W. 347; 34 C. J. p. 566, § 867; and cf. *Starbuck* v. *Starbuck*, 173 N. Y. 503.) The case at bar raises the question whether a party to a mutual fraud or collusion may collaterally attack the decree in so far as it operates as a judgment *in personam* (*France* v.

*France*, 79 App. Div. 291) declaring the validity of a contract to pay alimony. Of course, if the contract had not been sanctioned by the decree, our courts under the doctrine of *Schley* v. *Andrews* (225 N. Y. 110) might refuse to enforce the executory agreement. But where the findings and decree of the Idaho court have adjudged the contract fair, just and equitable, we are no longer dealing with the enforcement of an invalid executory contract, but with a contract which, at least until further action by the Idaho courts, is valid. The power of our courts to refuse to enforce such a judgment may seriously be questioned under the full faith and credit clause of the Constitution of the United States. (4 A. L. R. 968; 10 id. 719; 24 id. 1437.)

Nor can it be successfully contended that the Idaho decree is not binding upon us because the decree itself does not order the payments provided for by the agreement. Though the Idaho court did not direct the performance of the contract, it has rendered a declaration that the agreement " shall be and remain in full force and effect." We must, under the doctrine of *res judicata*, recognize its adjudication that the contract was fair, just and equitable. (The American Law Institute: Restatement of the Law of Conflict of Laws, Tentative Draft No. 5, § 487.) In *Julier* v. *Julier* (62 Ohio St. 90, 112) WILLIAMS, J., wrote: " The decree [of divorce] itself is conclusive evidence that the court was satisfied the agreement on which it was rendered was reasonable and just in all of its provisions as carried into the decree, all of which, in our opinion, it was within the jurisdiction of the court to confirm and enforce by its judgment.

" An objection is made to the operation of the decree in question as a bar to the right of dower claimed, on the ground that the agreement on which the decree is founded, is an unlawful one; the stipulation looking to an immediate divorce being, it is said, against public policy and rendering the whole contract void. This objection is not available. The alleged infirmity does not appear in the decree, nor in the record of that case. * * * The judgment cannot be impeached except by a direct proceeding to reverse or annul it. * * * Certainly as long as the decree remains in force the parties to it are estopped from alleging or proving the agreement was illegal, or disputing its validity.

" It is urged * * * that the defendants * * * brought themselves within that principle which denies the aid of the courts to those who are parties to illegal transactions. That principle is not applicable to them. The agreement was no longer executory. It was executed by the decree."

The defendant in the case at bar seeks collaterally to attack the adjudication without even alleging that the circumstances

surrounding the execution of the agreement were not disclosed to the Idaho court. Notwithstanding that the defendant defaulted in pleading in the divorce action, there is nothing in this record to indicate that the Idaho court did not conduct a full inquiry into the circumstances surrounding the execution of the agreement prior to its adjudication that the agreement was fair and in full force and effect. If the Idaho court was misled by the suppression of the true circumstances surrounding the execution of this agreement — a fact which is not alleged — relief may appropriately be sought in that jurisdiction. We cannot say what the action of that court would be when apprised of the true facts, nor that it might not even then adhere to its view that, despite the collusion, the agreement is just and equitable.

The order so far as appealed from should be reversed, with ten dollars costs and disbursements to the appellant, and the motion to strike out the second defense and for a dismissal of the counterclaim granted, with ten dollars costs, with leave to the defendant to serve an amended answer within twenty days on payment of said costs.

Dowling, P. J., concurs.

Order affirmed, with ten dollars costs and disbursements.